NUMBERS 13-99-647-CR 

 13-99-648-CR

 13-99-649-CR 



COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

 ____________________________________________________________________ 



MICHAEL LOPEZ, Appellant, 



v.


THE STATE OF TEXAS, Appellees. 

____________________________________________________________________ 



On appeal from the 105th District Court of Nueces County, Texas.


____________________________________________________________________ 



O P I N I O N

 
Before Justices Hinojosa, Chavez and Rodriguez

Opinion by Justice Hinojosa

 

 In Cause No. 13-99-647-CR, appellant, Michael Lopez, was charged with the offense of burglary of a building alleged
to have occurred on April 12, 1995. In Cause No. 13-99-649-CR, appellant was charged with the offense of burglary
of a building alleged to have occurred on April 8, 1995. In Cause No. 13-99-648-CR, appellant was charged with the
offense of aggravated robbery alleged to have occurred on September 4, 1995.(1)

 After appellant pleaded guilty to all three offenses, the trial court deferred the adjudication of guilt for each offense,
and placed appellant on community supervision. Appellant subsequently violated the conditions of his community
supervision, and the trial court adjudicated him guilty in the two burglary cases, but deferred adjudicating him in the
aggravated robbery case. In each case, appellant was continued on community supervision. Later, appellant violated
his community supervision, and he pleaded true to the allegations in the State's motions to revoke. The trial court
revoked his community supervision in the burglary cases and adjudicated him guilty in the aggravated robbery case.
This appeal ensued. 

 By two points of error, appellant complains that his counsel at the revocation hearing was ineffective. Appellant
contends the trial court erred in denying his motion for new trial because he received ineffective assistance of counsel,
and his pleas of true were not knowingly, intelligently, freely, or voluntarily made because he received ineffective
assistance of counsel. We affirm the trial court's orders revoking appellant's community supervision in Cause Nos.
13-99-647-CR and 13-99-649-CR. We dismiss appellant's appeal in Cause No. 13-99-648-CR for want of jurisdiction. 



A. Procedural History

 1. Cause Nos. 13-99-647-CR And 13-99-649-CR

 On October 19, 1995, appellant pleaded guilty to two offenses of burglary of a building. The trial court deferred
adjudicating guilt and placed him on five years community supervision. The State filed a motion to revoke on
December 17, 1997, and an amended motion to revoke on August 18, 1998. On August 19, 1998, the trial court
conducted a hearing and adjudicated appellant guilty of the offenses. For each offense, the trial court sentenced
appellant to two years confinement in a State Jail Facility. The trial court then suspended the sentences and placed
appellant on community supervision for five years. 

 On July 6, 1999, the State filed a second motion to revoke. The trial court conducted a hearing on September 20,
1999, and appellant pleaded true to the allegations in the State's motions to revoke. The trial court found appellant had
violated the terms of his community supervision, revoked his community supervision, and sentenced appellant to two
years confinement in a State Jail Facility for each offense, with the sentences to run concurrently. 

2. Cause No. 13-99-648-CR

 On February 1, 1996, appellant pleaded guilty to the offense of aggravated robbery. The trial court deferred
adjudicating guilt and placed him on ten years community supervision. The State filed a motion to revoke on
December 17, 1997, and an amended motion on August 18, 1998. The court conducted a hearing on August 19, 1998,
found that appellant had violated the conditions of his community supervision, but continued him on community
supervision without adjudicating guilt. The State filed its second motion to revoke on July 6, 1999. On September 20,
1999, the court conducted a hearing, and appellant pleaded true to the allegations in the State's motion to revoke. The
trial court found appellant had violated the conditions of his community supervision, adjudicated him guilty, revoked
his community supervision, and sentenced him to ten years confinement in the Institutional Division of the Texas
Department of Criminal Justice. 

 On September 22, 1999, appellant filed a pro se notice of appeal in all three cases. On October 1, 1999, the trial court
appointed counsel to represent appellant on appeal. On October 14, 1999, appellant filed a motion for new trial. The
trial court denied the motion for new trial on October 22, 1999. On February 2, 2000, appellant filed an amended
notice of appeal. 

B. Cause No. 13-99-648-CR

 Appellant's counsel has filed a brief in which she has concluded that the appeal in Cause No. 13-99-648-CR is wholly
frivolous and without merit. The brief meets the requirements of Anders v. California, 386 U.S. 738 (1967), as it
presents a professional evaluation of why there are no arguable grounds for advancing an appeal. See Stafford v. State,
813 S.W.2d 503 (Tex. Crim. App. 1991). Appellant's counsel states in the brief that she has informed appellant of his
right to examine the appellate record and to file a pro se brief. No such brief has been filed. 

 Article 42.12, section 5 of the code of criminal procedure controls questions concerning deferred adjudication
community supervision and motions to adjudicate guilt. Article 42.12, section 5(b) states in relevant part as follows: 

On violation of a condition of community supervision imposed under Subsection (a) of this section, the defendant may
be arrested and detained . . . . The defendant is entitled to a hearing limited to the determination by the court of
whether it proceeds with an adjudication of guilt on the original charge. No appeal may be taken from this
determination. 

 

Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2000). 

 It is well settled that no appeal may be taken from the hearing in which the trial court determines to proceed with an
adjudication of guilt on the original charge. Phynes v. State, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992); Olowosuko v.
State, 826 S.W.2d 940, 942 (Tex. Crim. App. 1992); Russell v. State, 702 S.W.2d 617, 618 (Tex. Crim. App.
1985);Leal v. State, 962 S.W.2d 652, 653 (Tex. App.--Corpus Christi 1998);Lindsey v. State, 902 S.W.2d 9, 13 (Tex.
App.--Corpus Christi 1995). This section provides that an appeal may not be taken from the trial court's determination
to adjudicate guilt after deferred adjudication. Tex. Code Crim. Proc. Ann. art. 42.12, § 5(b) (Vernon Supp. 2000).
Proceedings subsequent to an adjudication of guilt are appealable. Id. This rule is designed to eliminate appellate
review of the hearing on the motion to adjudicate guilt, including but not limited to issues such as admissibility and
sufficiency of the evidence. Gilbert v. State, 852 S.W.2d 623, 625 (Tex. App.--Amarillo 1993, no pet.); De Leon v.
State, 797 S.W.2d 



186, 188 (Tex. App.--Corpus Christi 1990, no pet.); Dahlkoetter v. State, 628 S.W.2d 255, 257 (Tex. App.--Amarillo
1982, no pet.). 

 There are a limited number of grounds under art. 42.12, section 5(b) allowing an appeal against the trial court's
decision to adjudicate; these concern matters of procedure and jurisdiction. See, e.g., Price v. State, 846 S.W.2d 37, 39
(Tex. App.--Dallas 1992), rev'd on other grounds, 866 S.W.2d 606 (Tex. Crim. App. 1993); Eldridge v. State, 731
S.W.2d 618, 619 (Tex. App.--Houston [1st Dist.] 1987, no pet.); Fuller v. State, 653 S.W.2d 65, 66-67 (Tex.
App.--Tyler 1983, no pet.);Dahlkoetter, 628 S.W.2d at 257-58. 

 We have carefully reviewed the entire record and counsel's brief and agree that the appeal in Cause No. 13-99-648-CR
is wholly frivolous and without merit. We find nothing in the record which might arguably support this appeal. 

 We conclude we are without jurisdiction to consider this appeal. Accordingly, we dismiss appellant's appeal in Cause
No. 13-99-648-CR for want of jurisdiction. 

C. Cause Nos. 13-99-647-CR And 13-99-649-CR

 By two points of error, appellant complains the trial court erred in denying his motion for new trial because: (1) he
received ineffective assistance of counsel at his revocation hearing, and (2) his pleas of true were involuntary and
unknowing because he received ineffective assistance. Appellant specifically contends his counsel was ineffective
because she did not subpoena crucial witnesses and spent only one fifteen-minute session with him prior to the hearing
on the motions to revoke. 

 When appellant had his deferred adjudication revoked on August 19, 1998, the trial court sentenced him in each case
to two years confinement, but suspended the sentences and placed him on community supervision for five years. As a
condition of appellant's community supervision, appellant was placed in a Substance Abuse Felony Punishment
Facility (SAFPF) Relapse Unit. The State's motions to revoke on July 6, 1999, were based in part on the fact that
appellant had absconded from the Texson Management Comstock Unit on May 15, 1999. 

 Appellant's briefs state: 

Prior to the hearing on the State's motions to revoke, trial counsel spent approximately fifteen to twenty minutes on one
occasion with Appellant to prepare for the hearing on the State's motion to revoke. Trial counsel for Appellant failed
to subpoena the Director of the SAFPF, Appellant's counselor at SAFPF, or Appellant's MHMR psychiatrist for the
hearing on the State's motions to revoke even though Appellant told trial counsel about the potential witnesses and that
he believed they would be helpful to him at the hearing on the State's motion to revoke. 



 Appellant testified at the hearing on the motions to revoke community supervision that while at SAFPF he and his
common-law wife were experiencing marital problems and he: 

received a letter and she admitted to [him] that she had had an affair with another man. And [he] took it hard cause
[he] love -- [he] love[d] this woman with all [his] heart. 



He further testified that his mother had three nervous breakdowns while he was in the treatment center, for which he
blamed himself. Appellant also attempted suicide while at the treatment center. Appellant asserts that the director,
counselor, and psychiatrist from the SAFPF: 

could have provided the court with first-hand knowledge and insight as to Appellant's performance at the SAFPF
Relapse Unit and Appellant's mental status at the time he absconded. The SAFPF Unit Director and counselor would
have been able to provide the trial court with an opinion about Appellant's ability to succeed in the SAFPF program if
returned. Appellant's MHMR psychiatrist could have provided the trial court with an opinion on whether Appellant
was mentally stable enough to continue in the program and complete the program. 



Basically, appellant asserts his trial counsel was ineffective because she failed to subpoena witnesses who had
testimony relevant to his performance while on community supervision. 

1. Standard of Review

 The granting or denying of a motion for new trial lies within the sound discretion of the trial court. State v.
Gonzalez, 855 S.W.2d 692, 696 (Tex. Crim. App. 1993). Appellate courts ordinarily will not reverse that decision
unless the trial court has abused its discretion. 

 The standard of review for ineffective assistance of counsel was set out in Strickland v. Washington. 466 U.S. 668,
687 (1984); Vasquez v. State, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992); Craig v. State, 825 S.W.2d 128, 129 (Tex.
Crim. App. 1992); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). The Strickland standard applies to
ineffective assistance of counsel at both the guilt-innocence and punishment phases of the proceedings. Hernandez v.
State, 988 S.W.2d 770 (Tex. Crim. App. 1999). A defendant seeking relief must demonstrate (1) that counsel's
performance failed to constitute reasonably effective assistance by falling below an objective standard of
reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's
deficient performance, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Hernandez,
726 S.W.2d at 55; Washington v. State, 771 S.W.2d 537, 545 (Tex. Crim. App. 1989); Lozada-Mendoza v. State, 951
S.W.2d 39, 42 (Tex. App.--Corpus Christi 1997, no pet.). A "reasonable probability" is defined as "a probability
sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Ex parte Walker, 777 S.W.2d 427,
430 (Tex. Crim. App. 1989). Whether this standard has been met is to be judged by "the totality of the representation."
Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). 

 Our review of counsel's performance must be highly deferential. Strickland, 466 U.S. at 689; Garcia v. State, 887
S.W.2d 862, 880 (Tex. Crim. App. 1994). 

The burden of proving ineffective assistance of counsel is on the appellant and is one which requires proof by a
preponderance of the evidence. Stafford v. State, 813 S.W.2d 503, 506 n.1 (Tex. Crim. App. 1991); Moore v. State,
694 S.W.2d 528, 531 (Tex. Crim. App. 1985);Cannon v. State, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984). An
allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record
affirmatively demonstrates counsel's alleged ineffectiveness. Ex parte McWilliams, 634 S.W.2d 815, 819 (Tex. Crim.
App. 1980). In determining whether trial counsel rendered deficient performance, we employ a strong presumption
that counsel's conduct constitutes sound trial strategy. 



Strickland, 466 U.S. at 689; Miniel v. State, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992). 

 Consistent with Strickland, we must presume that counsel is better positioned than the appellate court to judge the
pragmatism of the particular case, and that she made all significant decisions in the exercise of reasonable professional
judgment. Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992); Moffatt v. State, 930 S.W.2d 823, 826-27
(Tex. App.--Corpus Christi 1996, no pet.). The record must contain evidence of counsel's reasoning, or lack thereof, to
rebut that presumption. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The constitutional right to
counsel does not mean errorless counsel or counsel judged ineffective by hindsight. Ex parte Carillo, 687 S.W.2d 320,
324 (Tex. Crim. App. 1985). 

 Performance of counsel cannot generally be adequately examined based on a trial court record. Kemp v. State, 892
S.W.2d 112, 115 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd). A proper review should focus on a record
specifically targeting the conduct of trial counsel. Id. Such a record is best developed during a hearing on application
for writ of habeas corpus or motion for new trial. Id.; see Jackson, 877 S.W.2d at 772 (Baird, J., concurring). To find
that trial counsel was ineffective based on a record silent as to why trial counsel conducted the trial as she did would
call for speculation, which we are not permitted to do. See id.; Lozada-Mendoza, 951 S.W.2d at 44. 



a. Involuntary Plea

 First of all, appellant contends that his counsel "failed to inform [him] that if [he] did not plead true to the allegations
in the State's motion to revoke, the State would have to call witnesses to testify against him and produce the evidence
in court." Appellant asserts that counsel's failure to advise him of his rights and failure to insure that he understood his
rights resulted in him pleading true involuntarily and unknowingly. 

 A review of the entire representation establishes that appellant voluntarily pleaded true to the violations of his
community supervision. The record reflects that prior to accepting appellant's pleas of true, the trial court admonished
appellant in writing concerning the consequences of his pleas. The court's written admonishments are followed by a
document entitled "Defendant's Statement Understanding Admonishments." In this document, appellant states that he
understands the court's written admonishments of his constitutional rights, that he understands his constitutional rights,
and that he waives all of his constitutional rights. Included in the waiver of rights is the waiver of appellant's right "to
the appearance, confrontation, and cross-examination of the witnesses against [him]." The document is signed by
appellant. The "Defendant's Statement" is followed by "Counsel's Certificate of Consultation and Consent to Waiver."
In this document, appellant's attorney states that she has read and explained the court's written admonishments to
appellant, that he is fully aware of the consequences of his plea, his plea of true is made freely, voluntarily, knowingly,
and intelligently, and is done with counsel's advice, and appellant understands the admonishments given to him by the
court in writing. The Attorney's Certificate is followed by an order of the trial court accepting and approving the
Defendant's Written Statements. 

 At the hearing on the motion to revoke, the court asked appellant: 

Court: Have you had plenty of time to talk with your lawyer about each of these cases and to discuss with her any
possible defenses that you may have to the charges against you? 

 

Appellant: Yes, Your Honor. 

 

Court: Are you satisfied with the way that your lawyer has represented you? 

 

Appellant: Yes, Your Honor. 

 

Court: In each of these cases, I have a Court's Written Admonishment to Defendant in revocation in adjudication
proceedings in which the Court explains to you in writing your rights under the law in revocation proceedings. Did
you read this document for each case? Did you read it yourself? 

 

Appellant: Yes, Your Honor. 

 

Court: Do you understand everything that is contained in each document? 

 

Appellant: Yes, Your Honor. 

 

Court: Did you freely and voluntarily sign each document? 

 

Appellant: Yes, Your Honor. 

 

Court: Are you aware that by signing each document you were giving up valuable and important rights? 

 

Appellant: I was not aware of that, Your Honor. 

 

Court: Well, that's what it says right before you signed it. I explain to you in writing your rights and there's a statement
that says that you understand what your rights are, which you have signed. There's also a waiver of rights, and the ones
that are of great importance are the waiver of the confrontation of witnesses. That means that the State does not have
to bring in witnesses. You agree that the State may present its evidence against you by written reports or witness
statements. Do you understand that, sir? 

 

Appellant: Yes, Your Honor. 

 

Court: Do you understand that by signing this document you were giving up essentially all of your rights that you may
have in revocation proceedings? 

 

Appellant: Yes, Your Honor. 



 At the hearing on the motion for new trial, appellant's attorney asked and appellant testified as follows: 

Def. Atty.: Did -- Did Ms. Svoboda read to you all the rights that, the court documents that the Court gives you to fill
out, the admonitions from the Court and the waivers? Did she read those to you? 

 

Appellant: No, ma'am, all she -- all she told me was to initial the papers and for me to read them. And then when I was
in the panel she brought me another paper, to initial them, for me to read them, but she never sat down with me and
fully explained them to me. 



Def. Atty.: Well, did she explain them to you at all? 

 

Appellant: No, ma'am. 

 

Def. Atty.: And she didn't read them to you at all? 

 

Appellant: No, ma'am. 

 

Def. Atty.: And when you came before the Court, did you tell the Court that she had not read those documents to you? 

 

Appellant: Yes, I did. 

 

Def. Atty.: And did he read some of those documents to you? 

 

Appellant: Yes, he did. 

 

Def. Atty. And did he ask you if you understood them? 

 

Appellant: Yes, ma'am. 

 

Def. Atty.: And what did you tell him? 

 

Appellant: I said I did. 

 

Def. Atty.: Did you understand them? 

 

Appellant: No, ma'am. 

 

Def. Atty.: Well, why didn't you tell the Court that you didn't understand them? 

 

Appellant: I felt under pressure. 

 

Def. Atty.: What do you mean, you felt under pressure? You can tell him now. Now is the time to tell him how you
felt. 

 

Appellant: I felt that the Judge was getting irritated with me not understanding my rights and -- 



Def. Atty.: So did you -- did you understand all of your rights at the time that you entered your pleas of true? 



Appellant: No, ma'am. 



 On cross-examination, appellant testified he was aware that he could contest the allegations in the motion to revoke.
He testified: 

Prosecutor: Okay. So, in other words, you wanted the counselor in order to contest the allegations against you in the
Motion to Revoke, right? 

 

Appellant: That's correct. 

 

Prosecutor: So essentially you knew even when you were talking to Ms. Galvan that -- or Ms. Svoboda -- that you
could contest the allegations in the Motion to Revoke right? 

 

Appellant: Yes, ma'am. 

 

Prosecutor: Okay. And despite knowing that, you went ahead and plead true to the allegations, right? 



Appellant: That's correct. 

 

* * * * *

 

Prosecutor: Okay. And even after you signed the papers, the warning papers on each of your cases and the Judge told
you you were giving up valuable rights, you persisted in pleading true and pleading guilty to your own cases, right? 

 

Appellant: At first, I -- I advised the Judge that I did not understand my rights. 

 

Prosecutor: Okay. 

 

Appellant: And he asked me if my attorney had read them to me and my attorney did not say anything in my behalf.
She remained silent for the moment. 

 

Prosecutor: Okay. But you had told the Judge that you had read them? 

 

Appellant: Yes, ma'am. 

 

* * * * *

 

Prosecutor: And you went ahead and plead true to the allegations in your Motion to Revoke -- 



Appellant: That's correct. 

 

 While it does appear that appellant was unsure at the revocation hearing that he was "giving up valuable and important
rights," the court reiterated the rights, including the waiver of the confrontation of witnesses, and appellant
affirmatively acknowledged that he understood that he was waiving his rights. Appellant even testified on
cross-examination at the hearing on the motion for new trial that he knew that he could contest the allegations in the
motion to revoke by calling witnesses. Appellant stated at the revocation hearing that he was satisfied with the way his
lawyer had represented him, and he and his lawyer signed the written admonishments. Specifically, appellant's
attorney signed the "Counsel's Certificate of Consultation," stating that she had read and explained the admonishments
to appellant. Given this evidence, appellant's allegation at the motion for new trial that his counsel did not read the
admonishments to him, and he was unaware that he could contest the allegations against him, absent an affidavit or
testimony from counsel regarding whether she informed appellant of his rights, does not establish that counsel's
performance failed to constitute reasonably effective assistance. 

b. Failure to Subpoena Witnesses

 Secondly, appellant contends that his counsel was ineffective because she did not subpoena the individuals he told her
to call as witnesses. Appellant contends his counsel's failure to subpoena the SAFPF Unit Director, SAFPF counselor,
and the MHMR psychiatrist amounted to ineffective assistance of counsel and resulted in his community supervision
being revoked. 

 The record of the motion for new trial hearing contains the testimony of appellant. Significantly lacking from
appellant's new trial evidence, however, is either testimony or affidavit from appellant's counsel. Absent this vital
evidence, we can only look to the testimony of appellant to provide proof of Strickland's two-pronged test, and to
overcome the Jackson presumption of competent performance. 

 Appellant testified at the hearing on the motion for new trial: 

Def. Atty.: Do you feel that the outcome would have been different, Miguel, had the Court heard from your counselor
and from the unit director at the halfway house and the doctor at MHMR? 

 

Appellant: In my opinion, I would say yes. 

 

Def. Atty.: Why is that? Why do you think -- 

 

Appellant: Because they were -- my counselor and the unit director were the ones that were on my caseload and were
the ones that were working with me on my problems and the ones that I would talk to about my problems -- at the
halfway house. 

 

* * * * *

 

Def. Atty.: And what did the probation officer say? 



Appellant: Probation officer originally claimed that he was getting -- that I had made some phone calls, which were
accurate, you know, and I had -- when I got out of the halfway house, I called him first and told him, you know, I had
left. And I told him that I was in the area in Corpus Christi, but I told him that I didn't have a place to stay at. And he
also raised the claim that he was getting paperwork from my counselor that I was not complying with my programs. 

 

Def. Atty.: And if you had been allowed or if Ms. Svoboda had subpoenaed your counselor like you asked her to, do
you think your counselor would have refuted those claims? 

 

Appellant: Yes, she would have. 

 

* * * * *

 

Prosecutor: What was the purpose of the witnesses that you wanted to present at your hearing? 

 

Appellant: I feel that they would have benefitted me in my behalf and they would have given, not an excuse, but how
should I say, the reason to why the situation occurred and where I'm at today. 

 

* * * * *

 

Prosecutor: Okay. Now, you told her the name of your counselor? 

 

Appellant: Suzanne Thomas. 

 

* * * * *

 

Prosecutor: Okay. Now, do you know if Ms. Galvan, in fact, called her? 

 

Appellant: Not that I'm aware of. 

 

Prosecutor: Okay. Could she have called her and you just didn't know about it? 

 

Appellant: I couldn't answer that. 

 

* * * * *

 

Prosecutor: Did you know, in fact, if these -- if these witnesses would have testified favorably to you? 

 

Appellant: I couldn't answer that, ma'am. 

 

* * * * *

 

Def. Atty.: And -- And why do you believe or why did you want these witnesses called? 

 

Appellant: I feel that I would have had a better chance on my case in my behalf. 

 

Def. Atty.: Well, what do you mean by that? What do you think they would have told the Judge? 

 

Appellant: They would have told the Judge what the problems had been with me over there and what led to me
absconding from the halfway house. 

 

Def. Atty.: Were you having problems because you weren't wanting to follow the rules or weren't wanting to get help?
Is that why you left? 

 

Appellant: No, ma'am. 

 

Def. Atty.: Why did you leave? 

 

Appellant: I left for the simple reason that I felt that, like I stated in court the last time, that I felt that if I did not leave I
would not see my Mom or I would lose my wife. I would lose them both. 

 

* * * * *

 

Prosecutor: Mr. -- Mr. Lopez, there were other allegations in your Motion to Revoke that you plead true to, not just the
absconding from the facility, right? 

 

Appellant: Yes, ma'am. 

 

Prosecutor: And those other allegations that you did plead true to, the witnesses you wanted called wouldn't have had
anything to do with those allegations, right? 

 

Appellant: That's right. 



 While it is true that appellant's counsel did not subpoena the director, counselor, or psychiatrist, given that there is no
affidavit from counsel indicating the reasons for not subpoenaing the witnesses, to deem counsel's conduct as
ineffective would call for speculation, which we are not permitted to do. Further, appellant pleaded "true" to various
violations of his community supervision, not just the absconding from SAFPF, for which he asserts the witnesses
would be relevant.(2) Based upon any of these pleas, the judge could have revoked appellant's supervision. See Tex.
Code Crim. Proc. Ann. art. 42.12, § 21 (Vernon Supp. 2000). 

 Appellant also stated at the hearing on the motion for new trial that he did not even know whether the witnesses would
have testified favorably for him. Appellant could not even establish whether counsel tried to contact the individuals.
Counsel may have determined that the individuals would have been unfavorable witnesses. Thus, appellant has not
established that had the witnesses testified, the outcome of the proceedings would have been different. If the witnesses
would have provided the crucial evidence as appellant claims, he should have had them testify at the hearing on the
motion for new trial. 

 While appellant asserts that he asked counsel to subpoena the individuals, we are not convinced that there is a
reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been
different. Since there is no evidence in the record as to counsel's reasoning for not eliciting the testimony of the
potential witnesses, we must presume that she reasonably chose not to include the testimony as part of her trial
strategy. 

c. Time with Appellant

 Thirdly, appellant asserts his counsel did not have a firm command of the facts of his case because she spent only
fifteen-minutes with him ten days prior to the revocation hearing. 

 At the hearing on the motion for new trial, appellant testified: 

Def. Atty.: Okay. How many times did Deanne Svoboda come to the jail and talk to you? 

 

Appellant: Once. 

 

Def. Atty.: How long did your conversation last? 

 

Appellant: I'd say about fifteen, twenty minutes. 



 While a single fifteen-minute meeting with a client who is about to plead guilty to violations of his community
supervision may seem to fall below an objective standard of reasonableness under prevailing professional norms,
appellant has once again failed to provide this Court with an affidavit or testimony from his counsel as to why she
conducted the representation in this manner. All we have is appellant's allegation that he only met with his counsel
once. To find counsel ineffective based on this allegation, absent evidence from trial counsel, would call for
speculation on our part. Appellant, himself, even stated at the revocation hearing that he was satisfied with his
attorney's representation and that he had had ample time to discuss his case and possible defenses with her. Therefore,
appellant's allegation that his counsel was ineffective because she did not spend adequate time speaking with him about
his case is without merit. 

 After reviewing the entire record, we conclude appellant has not shown that he did not receive effective assistance of
counsel at the revocation hearing. Accordingly, we hold the trial court did not abuse its discretion by denying
appellant's motions for new trial. Appellant's two points of error are overruled. 



 We affirm the trial court's orders revoking appellant's community supervision in Cause Nos. 13-99-647-CR and
13-99-649-CR. We dismiss appellant's appeal in Cause No. 13-99-648-CR for want of jurisdiction. 





FEDERICO G. HINOJOSA 

Justice 





Do not publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this the 

17th day of August, 2000. 

1. Tex. Pen. Code Ann. §§ 29.03 & 30.02 (Vernon 1994). 

2. At the revocation hearing, the trial court admonished appellant that the State had alleged in the motions to revoke
that he had violated the following conditions of his community supervision: 



Court: The first one says that you failed to report for the months of May and June of 1999 in violation of Condition B
in each motion. 



* * * * *

 

The next one says that you refused to allow your supervision officer to visit you either at your home, at work, or
wherever he could have visited you in violation of Condition D. 



* * * * *

 

The next one says that you failed to notify your supervision officer of any change of residence, job placement, or job
employment or anything like that in violation of Condition E. 



* * * * *

 

And the last one says that you absconded from the Transitional Treatment Center in violation of Condition L. 



Appellant pleaded "true" to each of the charges.