**Donald Ray MOFFATT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–95–230–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1996.

---

Gene A. Garcia, Corpus Christi, for Appellant.

Luis V. Saenz, District & County Attorney, John A. Olson, Asst. County & District Attorney, Brownsville, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ

1. Act of May 2, 1991, 72nd Leg., R.S., ch. 113, § 2, 1991 Tex.Gen.Laws 686, 687 (amended

**OPINION**

FEDERICO G. HINOJOSA, Jr., Justice.

A jury found appellant, Donald Ray Moffatt, guilty of forgery of a government record,[1] and the trial court assessed punishment at sixteen years confinement. By a single point of error, appellant complains of ineffective assistance of counsel. We disagree and affirm the conviction.

By a single cross-point, the State contends that the trial court erred in ordering it to elect only one count, of a four count indictment, to submit to the jury. We agree, reverse the trial court's order that the State elect to proceed on one count, and remand the case to the trial court for a new trial on counts two and four of the indictment.

In February 1994, appellant and his wife, Christine, transported twelve vehicles from Dallas to the Rio Grande Valley for shipment into Mexico and Central America. The vehicles were stored at a parking lot belonging to Miranda Transmigrantes ("Miranda"), a customs brokerage house in Los Indios, Texas, until the vehicles could be cleared for entry into Mexico. Appellant gave the broker titles for the vehicles.

As Lieutenant Jose Cisneros of the Texas Department of Public Safety was conducting a routine inspection of vehicles located in the Miranda parking lot on February 16, 1994, he noticed that the vehicle identification numbers ("VIN number") had been altered on three pickup trucks, a Mitsubishi Montero, a Toyota T100, and a Mazda. Appellant claimed that he owned the Mitsubishi and the Toyota. However, all three vehicles displayed paper dealer plates bearing the same dealer identification number. After Lieutenant Cisneros received confirmation that the trucks were stolen, he arrested the Moffatts and their three drivers. Subsequent investigation revealed that the titles for the three trucks were forged.

Appellant and his wife were charged, in one indictment, with 1) forgery of a govern-

1993) (current version at Tex.Penal Code Ann. § 32.21 (Vernon 1994)).

mental writing, 2) possession of stolen property, 3) felony theft, and 4) tampering with vehicle identification numbers. All of the counts concerned the Mazda pickup which appellant denied owning. The trial court granted a severance as to the allegations against Christine Moffatt.

On the morning of March 28, 1995, immediately prior to the commencement of the trial, appellant announced to the trial court that he had lost faith in his retained attorney, Noe Garza. Appellant stated that he wanted to rely on the services of an attorney from Arizona. The trial court, however, would not allow appellant to delay the trial more than one hour, and the attorney from Arizona was not present in the courtroom. Appellant was then taken to a holding cell where there was no phone. At the end of the hour, appellant was not able to name a new attorney. The trial court refused to permit Garza to withdraw from the case, and appellant did not elect to proceed *pro se.*

When the State rested its case-in-chief, appellant moved for a directed verdict claiming the evidence was not legally sufficient to support a verdict on any of the four counts alleged in the indictment. The trial court granted this motion as to count three, felony theft. Throughout the proceedings, appellant urged the trial court to order the State to elect the one count that would be included in the jury charge. After both sides closed, the trial court, again at appellant's insistence, ordered the State to elect one of the three remaining counts to submit to the jury. The State chose count one, forgery of a government record. Appellant was convicted of count one, and now claims he was denied effective assistance of counsel.

■■■ Our review of counsel's performance must be highly deferential. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *Garcia v. State,* 887 S.W.2d 862, 880 (Tex.Crim. App.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995). The burden of proving ineffective assistance of counsel is on the appellant and is one which requires proof by a preponderance of the evidence. *Stafford v. State,* 813 S.W.2d 503, 506 n. 1 (Tex.Crim.App.1991); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App. 1985); *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819 (Tex.Crim.App.1980), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). In determining whether trial counsel rendered deficient performance, we employ a strong presumption that counsel's conduct constitutes sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

■■■ The standard of review for ineffective assistance of counsel during the guilt/innocence phase was set forth in *Strickland.* 466 U.S. at 687, 104 S.Ct. at 2064; *Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim.App. 1992); *Craig v. State,* 825 S.W.2d 128, 129 (Tex.Crim.App.1992); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). A defendant seeking relief must demonstrate 1) that counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under prevailing professional norms, and 2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Hernandez,* 726 S.W.2d at 55; *Washington v. State,* 771 S.W.2d 537, 545 (Tex.Crim.App.), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989). A "reasonable probability" was defined by the Supreme Court as "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex. Crim.App.1989). Whether this standard has been met is to be judged by "the totality of the representation." *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990).

■■■ Consistent with *Strickland,* we must presume that counsel is better positioned

than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment. *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App. 1992). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

■ Appellant specifically claims that his attorney failed to interview and call as defense witnesses Ken Wall, Mitch Thomas, Chris Adams, Eddie Garcia, and two others for whom complete identification was not provided. Appellant claims that these witnesses would have rebutted the inferences that could be drawn from the State's evidence concerning the altered titles and the circumstances related to the possession of the Mazda pickup. In addition, appellant contends that some of these witnesses could have provided information about appellant's ordinary and usual course of conducting business.

Garza testified at the hearing on appellant's motion for new trial that appellant had not informed him of Thomas, Adams, and the two other witnesses. Appellant testified that he gave Garza the names of these individuals on the day the trial commenced and that Mitch Thomas was present at the trial. Appellant also testified concerning the information he believed these witnesses would have provided. However, appellant identified two witnesses by first name only, and the record is not clear that counsel knew more than that about them, if he knew of them at all. In addition, the record is not clear that appellant ever told Garza of his desire to have Thomas testify. Moreover, none of these witnesses appeared at the hearing on appellant's motion for new trial, nor did appellant provide sworn statements from these witnesses setting forth their testimony.

Garza testified that after meeting with Ken Wall, he had two reasons for not calling this witness. First, Wall could not testify from personal knowledge that he saw appellant actually purchase and receive the title for the Mazda. Wall testified at the hearing on appellant's motion for new trial that he was relying on information provided by William Satterfield. Thus, Wall verified Garza's determination that Wall could only give hearsay testimony, and that it would not be admissible. Second, Wall met appellant in prison where both men were serving time together for prior convictions. Counsel testified that he did not want this information to reach the jury.

Garza testified that he knew of Eddie Garcia before the trial and subpoenaed him. However, Garcia lived in the Dallas area and was not able to travel because he was in need of surgery as a result of injuries he had suffered. When Garza learned of Garcia's situation, he requested and was granted a continuance. Because Garcia remained unable to travel, the trial court eventually encouraged Garza to obtain his testimony via deposition. According to Garza, appellant would not authorize the expense associated with the deposition. Therefore, Garcia did not testify. Appellant's testimony does not refute Garza's testimony. Garcia did not testify at the hearing on appellant's motion for new trial and did not provide a sworn statement setting forth his testimony.

Finally, the record shows that appellant was frequently out of the country before his trial and that Garza had difficulty obtaining information from him. Under the circumstances, we conclude that counsel's handling of the potential witnesses was not deficient.

■ Appellant also contends that Garza provided ineffective assistance because he failed to independently investigate the allegations contained in the indictment and show that appellant and other dealers operated under the same business practices. The record shows, however, that Garza reviewed the State's evidence, and that he filed several pre-trial motions to limit the admissibility of this evidence. Garza determined for himself that the titles and VIN numbers had certainly been altered. Garza also knew that when appellant handed the titles to a Miranda employee on or about February 16, 1994,

appellant claimed that he owned the vehicles. Based on these facts, Garza concluded that the only viable defense was to deny that appellant knew the titles in his possession were forged.

Through his examination of the State's witnesses, most of whom had experience with certificates of title, Garza elicited that only Officer Cisneros, who testified as a forgery expert, determined that the titles were indeed forged. Customs broker Jesus Dominguez Infante and his employee, Julian Medina, testified during Garza's cross-examination that they did not spot the forgeries on the faxed copies of the titles or on the actual titles. Javier Loredo, Constable of Precinct Five in Cameron County, gave the same testimony. Loredo admitted that he was more knowledgeable about stolen vehicles than the average lay person. In addition, Loredo stated that he had cleared appellant's vehicles for transport into Mexico based on information he obtained from the titles. We conclude that Garza did investigate the allegations in the indictment and that he attempted to prove, through the testimony of the State's witnesses, that only an expert could have realized the titles were forged.

■ Appellant further claims that Garza provided ineffective assistance because counsel failed to call appellant as a witness. The record shows that Garza did not want appellant to testify because of his prior conviction. According to appellant, his testimony would have shown that he acquired the vehicles and documents in his normal course of business through private purchases. He would have also testified that he did not forge the titles. However, this information does not prove that appellant did not knowingly possess forged documents with the intent to defraud another. Other than by denying knowledge of the forgeries, appellant does not explain how his testimony would disprove the State's allegation. We fail to see how Garza erred by not calling appellant as a witness.

The record clearly shows: 1) that Garza filed numerous pre-trial motions and requests; 2) that Garza obtained rulings on each one of them; 3) that the trial court sustained many of Garza's objections to the State's evidence and examination of witnesses; 4) that Garza's objections were timely and specific as to the error claimed; 5) that Garza's examination of the witnesses demonstrated his understanding of the law and facts applicable to the case; and 6) that at Garza's insistence, the trial court ruled there was no evidence to support a finding on count three of the indictment, ordered the state to elect to proceed on only one count, and included a requested jury instruction on extraneous offenses.

Considering the facts of the case and the totality of counsel's representation, we find that counsel's representation did not fall below the objective standard of reasonableness under the prevailing professional norms. Even if we were to find that counsel's performance was deficient, we find that there is no reasonable probability that the result of the trial would have been different. We hold that appellant was not denied effective assistance of counsel. We overrule appellant's sole point of error.

■ By a single cross-point, the State contends that the trial court erred in ordering it to elect only one count of a four count indictment to submit to the jury. Article 44.01(c) of the Code of Criminal Procedure provides that "[t]he State is entitled to appeal a ruling on a question of law if the defendant is convicted in the case and appeals the judgment." TEX.CODE CRIM.PROC. ANN. art. 44.01(c) (Vernon Supp.1996). Taking into account the trial court's directed verdict as to count three, we agree that the State should not have been forced to make an election between the remaining counts.

■ Offenses committed pursuant to the same transaction may be joined in one indictment. TEX.PENAL CODE ANN. §§ 3.01,[2]

**2. § 3.01. Definition**

In this chapter, "criminal episode" means the commission of two or more offenses, regard-

3.03[3] (Vernon 1994); Tex.Code Crim.Proc. Ann. art. 21.24[4] (Vernon 1989), art. 37.07[5] (Vernon 1981); *Hall v. State,* 862 S.W.2d 710, 713 (Tex.App.—Beaumont 1993, no pet.); *Letson v. State,* 805 S.W.2d 801, 804 (Tex. App.—Houston [14th Dist.] 1990, no pet.). Because the evidence in this case shows that the VIN number for the Mazda pickup was altered, the certificate of title for the truck was forged, and appellant claimed at one point to own the truck, we conclude that counts one, two, and four arose out of the same criminal episode. We further conclude that these offenses were committed pursuant to two or more transactions constituting a common scheme or plan. *See* Tex.Penal Code Ann. § 3.01(1) (Vernon 1994).[6] Accordingly, we hold that the State was entitled to submit all three counts to the jury. We sustain the State's cross-point.

We AFFIRM the judgment of the trial court as to count one of the indictment. We REVERSE the trial court's order that the State elect to proceed on one count and REMAND the case to the trial court for a

less of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
(2) the offenses are the repeated commission of the same or similar offenses.

Tex.Penal Code Ann. § 3.01 (Vernon 1994). Although this section was amended effective September 1, 1994, the amendments made no substantive changes.

3. § 3.03. Sentences for Offenses Arising Out of Same Criminal Episode
When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, sentence for each offense for which he has been found guilty shall be pronounced. Such sentences shall run concurrently.

Tex.Penal Code Ann. § 3.03 (Vernon 1994). This provision was not changed by the amendments which became effective September 1, 1994.

4. Article 21.14 states, in relevant part, as follows:

new trial on counts two and four of the indictment.

**Art. 21.24. Joinder of certain offenses**
(a) Two or more offenses may be joined in a *single indictment, information, or complaint,* with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code.

Tex.Code Crim.Proc.Ann. art. 21.24(a) (Vernon 1989).

5. Article 37.07 states, in relevant part, as follows:
**Art. 37.07. Verdict must be general; separate hearing on proper punishment**
Sec. 1.(c) If the charging instrument contains more than one count or if two or more offenses are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them.
Sec. 2.(c) Punishment shall be assessed on each count on which a finding of guilty has been returned.

Tex.Code Crim.Proc.Ann. art. 37.07, §§ 1(c), 2(c) (Vernon 1981).

6. We note that the 1993 amendments made no substantive changes to this section.