Luis Vicente HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–931–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 17, 2000.

Opinion Overruling Rehearing
Sept. 14, 2000.

Joseph A. Connors, III, McAllen, for Appellant.

Theodore C. Hake, Asst. Crim. Dist. Atty., Edinburg, for State.

Before Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice HINOJOSA.

A jury found appellant, Luis Vicente Hernandez, guilty of five counts of aggravated kidnaping,[1] three counts of robbery,[2]

---

1. TEX. PEN.CODE ANN. § 20.04 (Vernon 1994).

2. TEX. PEN.CODE ANN. § 29.02 (Vernon 1994).

and five counts of aggravated sexual assault[3] and assessed his punishment as follows:

(1) Aggravated Kidnaping Counts

| | | |
| --- | ------------- | ---------------------- |
| (a) | Count five | 40 years imprisonment |
| (b) | Count eleven | 40 years imprisonment |
| (c) | Count fourteen| 20 years imprisonment |
| (d) | Count one | 30 years imprisonment |
| (e) | Count eight | 30 years imprisonment |

(2) Robbery Counts

| | | |
| --- | ----------- | ------------------------------------------------------------------------------------ |
| (a) | Count three | 5 years imprisonment; suspended and placed on community supervision for 5 years |
| (b) | Count six | 5 years imprisonment; suspended and placed on community supervision for 5 years |
| (c) | Count twelve| 5 years imprisonment; suspended and placed on community supervision for 5 years |

(3) Aggravated Sexual Assault Counts

| | | |
| --- | -------------- | ---------------------- |
| (a) | Count four | 50 years imprisonment |
| (b) | Count seven | 50 years imprisonment |
| (c) | Count ten | 50 years imprisonment |
| (d) | Count thirteen | 50 years imprisonment |
| (e) | Count fifteen | 50 years imprisonment |

The trial court ordered all sentences to run concurrently. By eight points of error, appellant contends: (1) the trial court erred in denying his motion for new trial, (2) he was denied effective assistance of counsel, (3) he was subjected to double jeopardy, and (4) the evidence is legally insufficient. We affirm.

### A. Motion For New Trial

By his first point of error, appellant complains the trial court erred in denying his motion for new trial. Appellant contends his trial counsel rendered constitutionally ineffective assistance by failing to tell him of the State's plea bargain proposal, and based on this, the trial court should have granted him a new trial.

█ The granting or denying of a motion for new trial lies within the sound discretion of the trial court. *State v. Gonzalez*, 855 S.W.2d 692, 696 (Tex.Crim.App. 1993). Appellate courts ordinarily will not reverse that decision unless the trial court has abused its discretion.

█ The standard of review for ineffective assistance of counsel was set out in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App.1992); *Craig v. State*, 825 S.W.2d 128, 129 (Tex.Crim.App.1992); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). A defendant seeking relief must demonstrate (1) that counsel's performance failed to constitute reasonably effective assistance by falling below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Hernandez*, 726 S.W.2d at 55; *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.1989); *Lozada–Mendoza v. State*, 951 S.W.2d 39, 42 (Tex.App.—Corpus Christi 1997, no pet.). A "reasonable probability" is defined as "a probability

---

**3.** Tex. Pen.Code Ann. §§ 22.011(b)(1) & 22.021 (Vernon 1994 & Vernon Supp.2000).

sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Ex parte Walker,* 777 S.W.2d 427, 430 (Tex.Crim.App.1989). Whether this standard has been met is to be judged by "the totality of the representation." *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990). Our review of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Garcia v. State,* 887 S.W.2d 862, 880 (Tex.Crim. App.1994).

■■■ The burden of proving ineffective assistance of counsel is on the appellant and is one which requires proof by a preponderance of the evidence. *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Crim.App. 1991); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and if the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819 (Tex.Crim.App.1980). In determining whether trial counsel rendered deficient performance, we employ a strong presumption that counsel's conduct is reasonable and constitutes sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992).

■■ Consistent with *Strickland,* we must presume that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that he made all significant decisions in the exercise of reasonable professional judgment. *Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992); *Moffatt v. State,* 930 S.W.2d 823, 826–27 (Tex.App.—Corpus Christi 1996, no pet.). The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim.App.1994). The constitutional right to counsel does not mean errorless counsel or counsel judged ineffective by hindsight. *Ex parte Carillo,* 687 S.W.2d 320, 324 (Tex.Crim.App.1985).

Appellant contends he was denied effective assistance of counsel because his trial counsel failed to inform him of the prosecutor's suggested plea bargain that the State would make a recommendation of twenty years imprisonment for appellant's plea of guilty.[4] Appellant contends that:

> before picking a jury, lead prosecutor Treviño approached Banker [defense counsel] about plea bargaining this case and asked Banker if he thought Hernandez would take 20 years at a time Treviño was having witnesses' problems. Banker did not convey "this 20 years" to Hernandez, because he had maintained his innocence and the State was having problems locating their witnesses.

The State argues that trial counsel was not ineffective for failing to convey a passing comment which he knew was not a firm offer.

■■■ An accused is entitled to effective assistance of counsel during the plea bargaining process. *Randle v. State,* 847 S.W.2d 576, 580 (Tex.Crim.App.1993). A defendant has a right to be informed about plea bargain offers as part of his participation in the decision-making process surrounding his defense. *Ex parte Wilson,* 724 S.W.2d 72, 74 (Tex.Crim.App.1987). If defendant's attorney fails to inform him of proffered plea bargains, the attorney's performance was not reasonable under any objective standard of reasonableness. *Id.*

At the hearing on the motion for new trial, prosecutor Treviño testified concern-

---

4. The State had offered a plea bargain of sixty years imprisonment to appellant's trial counsel. The evidence establishes that trial counsel did not inform appellant of this offer. Appellant does not contend that counsel's failure to inform him of this offer constituted ineffective assistance of counsel because prejudice could not be established since appellant received no more than a fifty year sentence.

ing the "plea bargain exchange." The prosecutor testified:

> Right from the beginning Mr. Banker knew that 60 years was on the table. It was on the file. And after that, the only discussion was a comment made and I don't recall when it was, whether it was prior to jury selection or after the trial—after jury selection had been made, but it was right out in the hallway in front of the stairs going down. And in passing Mr. Banker said, Do you have any offer so I can relate to my client? I believe that's what I recall. And at that time we were having problems locating the witnesses. We only had one witness. And I said, We may consider 20 years. But that was the only extent, that was the only conversation about any plea negotiations. Nobody ever came back. I never pursued it because what was happening at that time as the trial was developing, the sheriff's department was out looking for the victims. So at all times I was in contact with our office and I was being told that we had been locating witnesses.
>
> **Now when there's a recommendation in the file for 40, 60 years, a high profile case, I don't have any authority to give or offer 20 years. I have to go to my supervisor.** (Emphasis added).

The evidence at the hearing on the motion for new trial establishes: (1) appellant would have accepted an offer of twenty years in prison in return for his plea of guilty; (2) appellant was also willing to take twenty-five or thirty years; (3) appellant's trial counsel never talked to him about entering a plea of guilty based on a plea bargain arrangement; and (4) appellant maintained his innocence to his trial counsel until he was found guilty by the jury.

After reviewing the record, we do not agree that trial counsel's representation fell below an objective standard of reasonableness. The alleged "20 year offer" was not a firm offer and appellant had continuously told defense counsel that he was innocent. Under these circumstances, we conclude it was reasonable for defense counsel not to convey the "in passing" offer.[5] Thus, the first prong of the *Strickland* test was not met.

Assuming, *arguendo*, that appellant had satisfied the first prong, we conclude he would not have established prejudice because the trial court would not have accepted a plea bargain of twenty years imprisonment. At the hearing on appellant's motion for new trial, the trial judge stated:

> [A]s in all cases before this court, any plea bargains have to be approved by the court. And if this defendant had come and pled guilty to these counts, which I believe he was found guilty of 14 counts—it's highly unlikely, or if not impossible that this court would have approved that kind of plea bargain agreement.

Therefore, neither prong of the *Strickland* test was met.

The trial court denied the motion for new trial explaining:

> And here we have an area of a passing offer. I think it's very speculative. I think that Mr. Banker acted reasonably in not conveying it in light of the fact that it wasn't a plea bargain and it was a passing comment. And I don't think it rises to—to the level that the cases require.

While defense counsel did have a duty to inform appellant of a plea bargain offer, we conclude a plea bargain offer of twenty years imprisonment was not made in this

---

5. We note trial counsel testified at the motion for new trial hearing that he considered his actions to be ineffective assistance of counsel. Trial counsel also stated he did not convey the "in passing plea" offer because, "I think it was a combination of the facts that Mr. Her-

nandez had maintained his innocence to me and secondly, because the fact that they were—you-all were having problems with your witnesses and that it looked like we—he may be able to not be prosecuted for some of these offenses."

case. The prosecutor testified, "Now when there's a recommendation in the file for 40, 60 years, a high profile case, *I don't have any authority to give or offer 20 years.* I have to go to my supervisor." (Emphasis added).

We conclude the trial court was correct in finding that there was no firm plea bargain offer. We hold the trial judge did not abuse her discretion in denying appellant's motion for new trial. Appellant's first point of error is overruled.

### B. BIASED JUROR

By his second point of error, appellant complains his trial counsel rendered ineffective assistance of counsel by failing to challenge or peremptorily strike a biased juror. Appellant argues that the presence of one partial juror on a jury destroys the impartiality of the entire jury and undermines confidence in the outcome of the trial; thus, there is a presumption of prejudice.

 Appellant complains he received ineffective assistance of counsel because his trial counsel did not move to strike a biased juror for cause during *voir dire.* During the individual *voir dire* of Yvette Farias, the following exchange took place:

Court: I believe that you indicated that you had heard a lot about this case through the media.

Juror: Well, I hadn't heard so much about it, it's just that he said any little thing. I just couldn't—I feel like— I'm kind of a sensitive person; if I heard testimony here of a victim, I don't think I could judge him fairly.

Court: Okay.

Juror: That's why I raised my hand.

Court: So you feel like you may not be able to be fair and impartial?

Juror: I'm not too sure that that's— that's just a doubt that I had.

Court: Okay.

Juror: Okay. As far as the sexual assault part.

Court: Okay.

Juror: I feel kind of strongly about that.

At this point, there were no challenges, by the State or defense, to Yvette Farias. She was selected as an alternate juror, and became a member of the jury at the beginning of the trial when another juror became ill.

Appellant argues we should hold that in a situation where there is a juror who was not challenged for cause, who should have been, and that juror served on the jury, then there is a presumption of prejudice. Appellant feels his trial counsel should have challenged juror, Yvette Farias, in accordance with article 35.16 of the code of criminal procedure. A challenge for cause may be made by the defense or the State if the juror "has a bias or prejudice in favor or against the defendant." TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(9) (Vernon 1989).

 The purpose of allowing jurors to be challenged for cause is to guarantee fair and impartial jurors for both the State and the defendant. *See Smith v. State,* 907 S.W.2d 522, 529 (Tex.Crim.App.1995). Prospective jurors should be excused for cause only if their views would prevent or substantially impair the performance of their duties as jurors. *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Moody v. State,* 827 S.W.2d 875, 888 (Tex.Crim.App.1992).

In this case, the defense counsel, the prosecutor, and the judge were in the best position to see and hear the prospective jurors and to evaluate their responses. This is especially true in a situation like this where prospective juror, Yvette Farias, vacillated and elements such as her demeanor, expression, emphasis and tone of voice, all of which escape the purview of the cold record, are important factors in assessing the message conveyed.

We note that trial counsel did strike other prospective jurors. We also note that appellant's trial counsel testified at the motion for new trial hearing, but appellant did not ask him his reasons for not

striking Yvette Farias. Accordingly, we will not speculate as to appellant's trial counsel's reasons for not striking Yvette Farias, and we presume it was part of his trial strategy.

Appellant does not claim that Yvette Farias's presence on the jury actually prejudiced him; he only argues that this Court should presume prejudice because Yvette Farias served on the jury. We decline to make that presumption.

After reviewing the record, we find no evidence that Yvette Farias's presence on the jury prejudiced appellant. Because we find no evidence of prejudice, we hold the outcome of the trial has not been undermined.

Therefore, we hold counsel's decision to not strike Yvette Farias was not unreasonable and did not prejudice appellant. Appellant's second point of error is overruled.

### C. Penalty Charge

By his eighth point of error, appellant complains his trial counsel was ineffective because he failed to object to the court's penalty charge. Appellant contends his counsel did not object to the omission from the court's penalty charge on the aggravated kidnaping charges of the issue, raised by the evidence, whether appellant voluntarily released each victim in a safe place.

While appellant asserts the standard of review for ineffective assistance of counsel at the punishment phase is set forth in *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Crim.

App.1980), this is no longer the standard. The court of criminal appeals has held that the *Strickland* two-prong test applies to noncapital sentencing proceedings rather than the *Duffy* standard. *See Hernandez v. State*, 988 S.W.2d 770 (Tex.Crim.App. 1999). Thus, we will use the *Strickland* standard to determine if appellant's trial counsel was ineffective in failing to request a jury instruction on whether appellant voluntarily released the victims in a safe place.

■ Sections 20.04(c) & (d) of the penal code provide that conviction for aggravated kidnaping shall be punishable as a first degree felony "unless" the accused voluntarily released his victim alive and in a safe place. Tex. Pen.Code Ann. § 20.04 (Vernon Supp.1999).[6] The issue of whether an accused voluntarily released his victim alive and in a safe place "is not submitted to the jury unless evidence is admitted supporting" a finding that he did. Tex. Pen.Code Ann. § 2.03(c) (Vernon 1994). In other words, the accused has the threshold burden of production; if no evidence from either party could support that finding, the accused is not entitled to an instruction, and he will be punished as a first degree felon. *Williams v. State*, 851 S.W.2d 282, 286 (Tex.Crim.App.1993). If evidence from any source does raise the issue, however, then "the court shall charge that a reasonable doubt on the issue requires" the jury to find the accused did in fact

---

6. § 20.04. Aggravated Kidnaping
 (a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
 (1) hold him for ransom or reward;
 (2) use him as a shield or hostage;
 (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
 (4) inflict bodily injury on him or violate or abuse him sexually;
 (5) terrorize him or a third person; or
 (6) interfere with the performance of any governmental or political function.
 (b) A person commits an offense if the person intentionally or knowingly abducts anoth-

er person and uses or exhibits a deadly weapon during the commission of the offense.
 (c) Except as provided by Subsection (d), an offense under this section is a felony of the first degree.
 (d) At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.
Tex. Pen.Code Ann. § 20.04 (Vernon Supp. 1999).

release his victim in a safe place. TEX. PEN.CODE § 2.03(d) (Vernon 1994).

The punishment charges in question are for counts one, five, eight, eleven, and fourteen. Each count is for aggravated kidnaping. The victims are Eufemia Torres Zamarron, Jessica Marlene Rivera, Olga Alicia Barrientos,[7] Estella Salazar, and Maria De Jesus Castro, respectively. In order to determine if trial counsel acted unreasonably in failing to request the inclusion, in the punishment charge, of the issue of whether appellant voluntarily released the victims in a safe place, we look at the record for the manner in which the victims were released.

### 1. Estella Salazar

Estella Salazar testified appellant took her to "an empty field where there wasn't any houses" and "there were canals" nearby. After sexually assaulting her, appellant left her bleeding in the field. Appellant threw Ms. Salazar's clothes out of the car window as he drove off.

### 2. Eufemia Torres Zamaron

Eufemia Torres testified that appellant took her to "some fields where there's a big canal." After sexually assaulting her, appellant left her bleeding and naked in the field. Ms. Torres testified the incident occurred about 1:00 or 2:00 p.m.

### 3. Olga Alicia Barrientos

Olga Barrientos testified that she got into appellant's car at approximately 6:30 p.m. Appellant then took her to a canal where there were not any houses. After appellant sexually assaulted her, he returned her clothes and left her in an open field.

### 4. Jessica Marlene Rivera

Jessica Rivera testified that appellant drove her to an open field near a canal bank in the early evening hours. It was not quite dark, it was probably around 6:00 or 6:30 p.m. After he sexually assaulted her, appellant went after her with a machete, but Ms. Rivera was able to run away from him and into a wooded area. As she was running in the wooded area it was getting dark.

### 5. Maria De Jesus Castro

Maria Castro testified that when she was picked up by appellant, it was late and it was dark. Appellant took her to some place out in the country where there were weeds. After he sexually assaulted her, appellant allowed her to put her clothes back on. He then took her to a Pizza Hut parking lot, close to the place where she was staying, and dropped her off. When he left her, Maria Castro was hemorrhaging from the injuries she sustained when appellant placed an object in her rectum. As Maria Castro tried to walk to safety she passed out and "when [she] woke up [she] was already in the hospital."

From the testimony of the victims and the rest of the record, we do not find evidence that appellant released his victims in a safe place. *See Oestrick v. State,* 939 S.W.2d 232, 239 (Tex.App.—Austin 1997, pet. ref'd) (stating "the legislative intent of the voluntary release statute appears to be to give a kidnapper incentive to release his victim unharmed"). Estella Salazar, Olga Barrientos, Eufemia Torres, and Jessica Rivera were all left in a deserted field. Eufemia Torres was left naked and bleeding. Estella Salazar was left bleeding. Olga Barrientos was left in the deserted field in the early evening hours when it was almost dark. Jessica Rivera escaped from appellant, and appellant chased her with a machete. We conclude the conditions of the release of these four victims cannot be considered safe by any reasonable person.

As for the release of Maria Castro, we also find that it was not in a safe place.

---

7. The reporter's record refers to the victim as Olga Alicia Barrientes. We assume this is just a simple typographical error by the court reporter.

While appellant did leave her at a Pizza Hut parking lot, it was late at night, she was alone, and the injuries she sustained were causing her to hemorrhage. Under these conditions, the Pizza Hut parking lot was not a safe place. The only safe place would have been a hospital. Thus, appellant did not leave Maria Castro in a safe place.

■ Appellant contends his right to a fair trial was violated because the trial court failed to include the safe place instruction in the punishment charge. Appellant argues that his right to a trial by jury, guaranteed by article one, section ten of the Texas Constitution, and his right to a fair and impartial penalty trial under article one, section nineteen, the due course of law provision of the Texas Constitution, were violated by the "trial court's partial failure to apply all the penalty law to the facts in its court's charge to the jury." Appellant also asserts he was deprived of his rights under the United States Constitution. *See* U.S. CONST. amend. VI & XIV. Appellant asks us to conclude that the charge error infringed upon his state and federal constitutional rights. We disagree.

We find no evidence in the record that appellant released his victims in a safe place. Thus, he was not entitled to such an instruction. The trial court did not fail to submit the instruction; rather, there was no evidence to raise the issue of whether appellant released the victims in a safe place.

We find no evidence in the record concerning trial counsel's reason for not requesting an instruction on the return of the victims to a safe place. We will not speculate as to the reason, and we presume his reason was based on trial strategy. Therefore, we do not find it unreasonable for appellant's trial counsel to not request an instruction at the punishment phase that, should the jury find that the victims were voluntarily released alive and in a safe place, then the offense would be considered a second degree felony.

Because we do not find that trial counsel was unreasonable, we need not consider the prejudice prong of the *Strickland* test. Appellant's eighth point of error is overruled.

### D. DOUBLE JEOPARDY

■ In his third, fourth, and fifth points of error, appellant contends he was subjected to double jeopardy. Appellant contends the double jeopardy clauses of the United States and Texas constitutions were violated because the convictions for robbery and aggravated sexual assault, as alleged in the indictments, constituted the same offense arising out of the same transaction.

■ The Fifth Amendment to the United States Constitution stipulates that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This provision has been made applicable to the states by incorporation into the Due Process Clause of the Fourteenth Amendment. *Illinois v. Vitale*, 447 U.S. 410, 415, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). Article one, section fourteen of the Texas Constitution also proscribes double jeopardy, but this provision does not require separate analysis, because the double jeopardy ban under the Texas Constitution affords no broader protection than the federal constitution. *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990). The double jeopardy clause specifically protects against three distinct abuses by state authority: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple prosecutions for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex.Crim. App.1990); *Gonzalez v. State*, 973 S.W.2d 427 (Tex.App.—Austin 1998). Appellant invokes the third protection.

The double jeopardy guarantee against multiple punishments for the same offense prevents the sentencing court from prescribing greater punishment than the legislature intended. *Gonzalez*, 973 S.W.2d at 429; *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex.Crim.App.1992). Greater inclusive and lesser included offenses are the same for jeopardy purposes. *Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App. 1994) (citing *Brown v. Ohio*, 432 U.S. 161, 169, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

Appellant complains he was subjected to double jeopardy when he was convicted and sentenced for: (1) counts three **and** four; (2) counts six **and** seven; and (3) counts twelve **and** thirteen. Appellant contends:

> Since the prosecution and conviction on each of three separate victims for each of the grouped counts of "3–4," "6–7," and "12–13" was each for a crime which had "various incidents in it common to its other above combined count," double jeopardy barred appellant from being sentenced at the conclusion of a single trial on both of counts 3 & 4, on both of counts 6 & 7 and on both of counts 12 & 13.

For clarity purposes we will set out the counts as stated in the indictment.

### COUNT THREE

... LUIS VICENTE HERNANDEZ, hereinafter styled Defendant, on or about the 8th day of February, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally and knowingly threaten and place Eufemia Torres Zamarron, the victim, in fear of imminent bodily injury and death;

### COUNT FOUR

... LUIS VICENTE HERNANDEZ, hereinafter styled Defendant, on or about the 8th day of February, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, intentionally and knowingly by the use of physical force and violence, cause his sexual organ to penetrate the female sexual organ of Eufemia Torres Zamarron, the victim, a person not the spouse of the Defendant and without the victim's consent, and the Defendant intentionally and knowingly, by acts and words, placed the victim in fear that death and serious bodily injury would be imminently inflicted on the victim;

### COUNT SIX

... LUIS VICENTE HERNANDEZ, hereinafter styled Defendant, on or about the 12th day of January, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally and knowingly threaten and place Jessica Marlene Rivera, the victim, in fear of imminent bodily injury and death;

### COUNT SEVEN

... LUIS VICENTE HERNANDEZ, hereinafter styled Defendant, on or about the 12th day of January, 1996, in Hidalgo County, Texas, did then and there, intentionally and knowingly by the use of physical force and violence, cause his sexual organ to penetrate the anus of Jessica Marlene Rivera, the victim, a person not the spouse of the Defendant and without the victim's consent, and the Defendant intentionally and knowingly, by acts and words, placed the victim in fear that death and serious bodily injury would be imminently inflicted on the victim;

AND

... LUIS VICENTE HERNANDEZ, on or about the 12th day of January, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, intentionally and knowingly by the use of physical force and violence, cause his finger to penetrate the anus of Jessica Marlene Rivera, the victim, a person not the spouse of the Defendant and without the victim's consent, and the Defendant intentionally and knowingly, by acts and words, placed the victim in fear that death and serious bodily injury would be imminently inflicted on the victim;

AND

... LUIS VICENTE HERNANDEZ, on or about the 12th day of January, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, intentionally and knowingly by the use of physical force and violence, cause his sexual organ to penetrate the mouth of Jessica Marlene Rivera, the victim, a person not the spouse of the Defendant and without the victim's consent, and the Defendant intentionally and knowingly, by acts and words, placed the victim in fear that death and serious bodily injury would be imminently inflicted on the victim;

### COUNT TWELVE

... LUIS VICENTE HERNANDEZ, hereinafter styled Defendant, on or about the 25th day of February, 1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, while in the course of committing theft of property and with intent to obtain and maintain control of said property, intentionally and knowingly cause bodily injury to Estella Salazar, the victim, by striking her with his hand;

### COUNT THIRTEEN

... LUIS VICENTE HERNANDEZ, on or about the 25th day of February,

1996, and before the presentment of this indictment, in Hidalgo County, Texas, did then and there, intentionally and knowingly by the use of physical force and violence, cause his finger to penetrate the anus of Estella Salazar, the victim, a person not the spouse of the Defendant and without the victim's consent, and the Defendant intentionally and knowingly, by acts and words, placed the victim in fear that death and serious bodily injury would be imminently inflicted on the victim;

At the guilt/innocence phase of the trial, the jury found appellant guilty of each of the counts.

The court of criminal appeals has restricted appellant's ability to raise a double jeopardy claim on appeal by placing on the defendant the burden of raising double jeopardy claims before the charges against him are submitted to the jury. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex.Crim.App. 2000). Double jeopardy claims may not be raised for the first time on appeal. *Id.* at 643. Appellant did not raise his double jeopardy claims before the charge was submitted to the jury. He raises it for the first time on appeal. As instructed by *Gonzalez*, we overrule appellant's third, fourth, and fifth points of error.

### E. SUFFICIENCY OF THE EVIDENCE

By his sixth and seventh points of error, appellant complains the evidence is legally insufficient to convict him on counts fourteen and fifteen. Appellant contends the evidence is legally insufficient because the State's proof of a victim "Castillo" did not match the victim's alleged name of "Castro."

In reviewing a legal sufficiency of the evidence claim, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Patrick v. State,* 906 S.W.2d 481, 486 (Tex.Crim.App.1995); *Turro v. State,* 867 S.W.2d 43, 46–47 (Tex.Crim.App.1993); *Arceneaux v. State,* 803 S.W.2d 267, 269 (Tex.Crim.App.1990); *Rosillo v. State,* 953 S.W.2d 808, 811 (Tex.App.—Corpus Christi 1997, pet. ref'd). Sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 239 (Tex.Crim.App.1997).

The identity of the complaining witness must be alleged and proved by the State at trial. *See Abu–Shabaam v. State,* 848 S.W.2d 782, 785 (Tex.App.—Houston [14th Dist.] 1993), *vacated on other grounds,* 856 S.W.2d 436, 437 (Tex.Crim.App.1993), *reaffirmed,* 859 S.W.2d 592, 593 (Tex.App.— Houston [14th Dist.] 1993, pet. ref'd); *Gayton v. State,* 732 S.W.2d 724, 724 (Tex. App.—Corpus Christi 1987, pet. ref'd).

Counts fourteen and fifteen of the jury charge are set out below:

### COUNT FOURTEEN

Now, if you find from the evidence beyond a reasonable doubt that LUIS VICENTE HERNANDEZ, on or about the 5th day of August, 1995, in Hidalgo County, Texas, did then and there intentionally or knowingly abduct Maria De Jesus Castro by restraining her with intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found and without her consent did then and there restrain her so as to interfere substantially with her liberty by moving her from one place to another, and the Defendant did then and there intentionally or knowingly abduct her with the intent to violate or abuse her sexually, then you will find the Defendant guilty of Aggravated Kidnaping as alleged in the indictment.

### COUNT FIFTEEN

Now, if you find from the evidence beyond a reasonable doubt that on or about the 5th day of August, 1995 in Hidalgo County, Texas, the defendant, LUIS VICENTE HERNANDEZ, did then and there intentionally and knowingly by the use of physical force or violence, cause his finger to penetrate the anus of Maria De Jesus Castro, a person not the spouse of the Defendant and without her consent, and the Defendant intentionally or knowingly, by acts or words placed Maria De Jesus Castro in fear that death or serious bodily injury would be imminently inflicted on her;

OR

If you find from the evidence beyond a reasonable doubt that on or about the 5th day of August, 1995 in Hidalgo County, Texas, the defendant, LUIS VICENTE HERNANDEZ, did then and there intentionally and knowingly by the use of physical force or violence, cause his sexual organ to penetrate the female sexual organ of Maria De Jesus Castro, a person not the spouse of the Defendant and without her consent, and the Defendant intentionally or knowingly, by acts or words placed Maria De Jesus Castro in fear that death or serious bodily injury would be imminently inflicted on her;

OR

If you find from the evidence beyond a reasonable doubt that on or about the 5th day of August, 1995 in Hidalgo County, Texas, the defendant, LUIS VICENTE HERNANDEZ, did then and there intentionally and knowingly by the use of physical force or violence, cause an unknown object to penetrate the anus of Maria De Jesus Castro, a person not the spouse of the Defendant and without her consent, and the Defendant intentionally or knowingly, by acts or words placed Maria De Jesus Castro in fear that death or serious bodily injury would be imminently inflicted on her;

OR

If you find from the evidence beyond a reasonable doubt that on or about the

5th day of August, 1995 in Hidalgo County, Texas, the defendant, LUIS VICENTE HERNANDEZ, did then and there intentionally and knowingly by the use of physical force or violence, cause his sexual organ to penetrate the mouth of Maria De Jesus Castro, a person not the spouse of the Defendant and without her consent, and the Defendant intentionally or knowingly, by acts or words placed Maria De Jesus Castro in fear that death or serious bodily injury would be imminently inflicted on her, then you will find the Defendant guilty of Aggravated Sexual Assault as alleged in the indictment.

Appellant argues there is a material variance between the name of the victim as alleged and as proved. He contends the victim testified that her name was Maria De Jesus Castillo, and the State alleged her name to be Maria De Jesus Castro. Appellant argues that this fatal variance establishes that there is insufficient evidence to convict appellant for counts fourteen and fifteen.

The State contends there simply is confusion in the reporter's record as to the name of the witness who testified. The State notes that the witness testified through a translator and the names "Castro" and "Castillo" are phonetically quite similar. The State contends that the prosecutor continuously referred to the witness as Ms. Castro, and the defense did as well, but yet no one asked for clarification as to the witness's name when she allegedly referred to herself as Ms. Castillo.

 A review of the record establishes the witness in question testified to the injuries she sustained from her encounter with appellant. The witness also stated that she was hospitalized to undergo surgery because her intestines had been cut by the object appellant placed inside her rectum. We also note that the State introduced the medical records of the witness when she was treated for her injuries. The name on the records is "MARIA DE J CASTRO." The description of the injuries by the treating doctor on the medical records equates with the witness's description at trial of the injuries she sustained.

Investigator Martiniano Treviño also testified to his involvement in the investigation of this case. Investigator Treviño testified that he was personally involved in the investigation of Maria Castro's case. He identified clothing that belonged to Maria Castro. Treviño also identified Ms. Castro as the victim that was picked up at a bar by appellant and then left at the Pizza Hut. Investigator Treviño's testimony about the bar and the Pizza Hut matches the testimony by the witness referred to by the prosecution as Maria Castro.

We do not find a fatal variance between the victim alleged in the indictment and charge and the victim proved by the State. We conclude the alleged mistake in the witness's name was simply that, a mistake by the court reporter that the witness's name was Maria De Jesus *Castillo*. Accordingly, we hold the evidence was legally sufficient for the jury to find that appellant committed aggravated kidnaping and aggravated sexual assault against Maria De Jesus Castro. Appellant's sixth and seventh points of error are overruled.

The judgment of the trial court is affirmed.

## OPINION ON MOTION FOR REHEARING

Appellant has filed a motion for rehearing in which he raises seven points of error. We deny appellant's motion for rehearing. However, we believe one issue raised by appellant should be addressed.

Appellant notes that the last sentence of our opinion states: "The judgment of the trial court is affirmed." Because the trial court rendered a separate judgment for each of the thirteen counts for which appellant was found guilty, appellant questions our disposition of the remaining twelve judgments.

The last sentence of our opinion should have read: "The judgments of the trial court are affirmed." So there is no further misunderstanding, we now affirm all thirteen judgments rendered by the trial court in this case.