NUMBER 13-09-00369-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI - EDINBURG  

                                                                                                                     


 

JOSE CARDENAS,                                                              
    Appellant,

 

v.

 

THE STATE OF TEXAS,                         
                        Appellee.

                                                                                                                     
  

 

On appeal from the 117th
District Court 

of Nueces County,
Texas.

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides  

Memorandum Opinion by
Justice Rodriguez

                                                                                                                                    

            Appellant Jose Cardenas challenges his
conviction by a jury for aggravated robbery, a first degree felony, for which
he was sentenced to thirty years' incarceration.  See Tex. Penal Code Ann. § 29.03 (Vernon
2003).  By three issues, Cardenas argues that:  (1) the evidence was legally
and factually insufficient to prove he was guilty as a party in the aggravated
robbery; (2) his trial counsel was ineffective for failing to communicate
certain plea offers to him; and (3) his trial counsel was ineffective for
failing to review certain discovery that would have revealed the weakness of
the State's case against Cardenas.  We affirm.

I. 
Background

 

            In August 2008, A.R.,[1]
Cardenas's friend, robbed John's Market, a convenience store in Corpus Christi,
Texas.  Because of his alleged connection to that offense, Cardenas was
indicted for aggravated robbery as follows:

[O]n or about August 24, 2008, in Nueces County, Texas,
[Cardenas] did then and there while in the course of committing theft of
property and with intent to obtain or maintain control of said property,
intentionally or knowingly threaten or place Manoj Kalisetty in fear of
imminent bodily injury or death, and [Cardenas] did then and there use or
exhibit a deadly weapon, to wit:  a firearm . . . .

 

See id. § 29.03(a)(2).  Cardenas
pleaded not guilty to the offense, and his case was tried to a jury.  At trial,
Cardenas did not dispute that A.R. had committed the aggravated robbery.  After
the close of evidence, the jury was charged on aggravated robbery and the law
of the parties and returned a guilty verdict, convicting Cardenas of aggravated
robbery.  After a hearing on punishment, the jury sentenced Cardenas to thirty
years' confinement in the Institutional Division of the Texas Department of
Criminal Justice.  This appeal followed.

II. 
Sufficiency of the Evidence

 

By his first issue, Cardenas argues that
the evidence was legally and factually insufficient to prove he was guilty as a
party in the aggravated robbery.  Specifically, Cardenas argues that the
evidence that he "was outside the back of John's Market when it was
robbed, straddling one bicycle, holding another, and left the back of the store
after the robbery with both bicycles, one of which belonged to the robber is .
. . insufficient to prove he was guilty as a party." 

A. 
Standard of Review and Applicable Law

Although Cardenas challenges both the
legal and factual sufficiency of the evidence, in light of the Texas Court of
Criminal Appeal's recent Brooks v. State opinion, we will conduct only a
legal sufficiency review.  See 323 S.W.3d 893, 912 (Tex. Crim. App.
2010).  Brooks held that there is "no meaningful distinction
between the . . . legal-sufficiency standard and the . . . factual-sufficiency
standard, and these two standards have become indistinguishable."  Id.
at 902.  A legal sufficiency standard is "the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element in a criminal offense that the State is required to
prove beyond a reasonable doubt.  All other cases to the contrary . . . are
overruled."  Id. at 912.

            When conducting a legal sufficiency review, a
court must ask whether "any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt"—not whether
"it believes that the evidence at the trial established guilt
beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307,
318-19 (1979).  A legal sufficiency analysis requires the court to view all of
the evidence in "a light most favorable to the verdict and to determine
whether a rational trier of fact could have found all of the essential elements
of the crime beyond a reasonable doubt."  Id.; see Laster
v. State, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).  The trier of fact is
the sole judge of the facts, the credibility of the witnesses, and the weight
given to testimony.  Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Beckham v. State, 29 S.W.3d
148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd).  We do not
reevaluate the weight or credibility of the evidence, nor do we substitute our
own conclusions for the trier of fact.  King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000) (en banc).  Instead, we resolve any inconsistencies
in the evidence in favor of the final judgment and consider whether the jury
reached a rational decision.  Curry v. State, 30 S.W.3d 394, 406 (Tex.
Crim. App. 2000).

            Legal sufficiency is measured by the elements
of the offense as defined by a hypothetically correct jury charge.  Villarreal
v. State, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  "Such a charge is one that
accurately sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict
the State's theories of liability, and adequately describes the particular
offense for which the defendant was tried."  Villarreal, 286 S.W.3d
at 327; see Malik, 953 S.W.2d at 240.

            As indicted in this case, a person is guilty
of aggravated robbery if he "commits robbery" and "uses or
exhibits a deadly weapon."  Tex.
Penal Code Ann. § 29.03(a)(2).  A person commits robbery "if, in
the course of committing theft . . . and with intent to obtain or maintain
control of the property, he . . . intentionally or knowingly threatens or
places another in fear of imminent bodily injury or death."  Id. §
29.02(a)(2) (Vernon 2003).  A person commits the offense as a party if,
"acting with intent to promote or assist the commission of the offense, he
solicits, encourages, directs, aids, or attempts to aid the other person to
commit the offense."  Id. § 7.02(a)(2) (Vernon 2003).

            "Circumstantial
evidence is as probative as direct evidence in establishing the guilt of the
actor, and circumstantial evidence alone can be sufficient to establish
guilt."  Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); see
Kuciemba v. State, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). 
"Circumstantial evidence alone may be used to prove that a person is a
party to an offense."  Powell v. State, 194 S.W.3d 503, 506 (Tex.
Crim. App. 2006) (citations omitted); Escobar v. State, 28 S.W.3d 767,
774 (Tex. App.–Corpus Christi 2000, pet. ref'd).  "'[T]he standard of
review on appeal is the same for both direct and circumstantial evidence
cases.'"  Kuciemba, 310 S.W.3d at 462 (quoting Guevara v. State,
152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).  Further, the law does not require
that each fact "point directly and independently to the guilt of the
appellant, as long as the cumulative effect of all the incriminating facts is
sufficient to support the conviction."  Hooper, 214 S.W.3d at 13. 
So long as "the verdict is supported by a reasonable inference, it is
within the province of the fact[]finder to choose which inference is most
reasonable."  Laster, 275 S.W.3d at 323.

B. 
The State's Evidence

            The State first
called Manoj Kalisetty, the clerk at John's Market at the time of the robbery. 
Kalisetty testified that a man with a bandana over his face came into the store
and demanded money.  Kalisetty recognized the man as one who came to John's
Market regularly and, at first, believed that the man was joking.  When
Kalisetty did not hand over the money, the man attempted to pick up the cash
register.  When Kalisetty and the store's stocker tried to stop the man from
taking the cash register, he pulled a gun out, pointed it at Kalisetty, and
Kalisetty ran to the store's office because he feared for his life.  The man
then ran out of the store with the cash register and gun.  Kalisetty testified
that the man had come into the store two or three times earlier that day.

            Jesse Trevino, the stocker at John's Market,
testified next.  Trevino testified that he recognized the man who pulled the
gun and took the cash register as a store regular.  The man was wearing a
bandana over his face.  Trevino followed the man as he ran out of the store and
testified that the man dropped the gun and cash register outside the store. 
Trevino found another person outside the store, whom he identified as
Cardenas.  He testified that Cardenas had been in the store with the robber
several times earlier that day.  Trevino testified that Cardenas was sitting on
a bicycle by the dumpster outside the store; Cardenas was holding another
bicycle and had a white shirt over his face.  Trevino testified that Cardenas
did not do anything to assist the robber as he ran past and that Cardenas just
stood by the dumpster and watched him run by.  Trevino testified that the
robber, whom he finally identified as A.R., always rode his bicycle to the
store.

            Next, Raul
Martinez, a cab driver who came to John's Market to pick up a customer at the
time of the robbery, testified that when he drove up to the store, he saw the
clerk inside with his hands up.  Martinez testified that he saw another person
by the dumpster with a white t-shirt pulled up over his face straddling a bike
and holding another bike; he identified that person as Cardenas.  Martinez
believed, and told police, that Cardenas was the look-out.  Martinez testified
that Cardenas did not help A.R. and looked "out of it."  He testified
that Cardenas did not move when the police arrived.

            Officer Joseph Garza of the Corpus Christi
Police Department (CCPD) then testified that when he arrived at the scene, he
found Cardenas, with his shirt over his face, riding away from John's Market
dragging another bicycle.  Officer Garza believed that if the extra bicycle had
been left at the scene, it could have been used to identify the other person
involved in the robbery; by taking the bicycle with him, Officer Garza
testified, Cardenas was assisting the robber in hiding his identity.  Officer
Garza described Cardenas's riding as "hurr[ied]" and it appeared
"obvious" to Officer Garza that Cardenas was fleeing the scene and
trying to take evidence with him.  Officer Garza testified that when he was
transporting A.R. to jail, A.R. stated that the other bicycle was his.

CCPD Officer Jaime Silvas arrived at the
scene with Officer Garza.  Officer Silvas testified that he witnessed Cardenas,
with a white t-shirt on top of his head, riding away from John's Market on a
bicycle and that he was dragging another bicycle with him.  Officer Silvas
further testified that, when they apprehended Cardenas, he was travelling
toward the location where A.R. had dropped the cash register.

CCPD Officer Andrew Ybanez identified
Cardenas at the scene.  Cardenas told Officer Ybanez that he and A.R. had been
riding their bicycles together that evening.  Officer Ybanez testified that it
is difficult to determine whether a person has been taking Xanax and that he
was unsure if Cardenas had taken any pills.  He testified that Cardenas was
able to give him his date of birth and address and that he did not appear
intoxicated.  Officer Ybanez also testified that Cardenas gave the wrong name
when he checked into the jail, but that it is not unusual for a person to lie
about their name when checking into jail.

CCPD Officer Isaac Rodriguez testified
about the gun used in the robbery.  He identified it as a sawed-off shotgun and
stated it was capable of inflicting serious bodily injury or death.  Officer
Rodriguez testified that he apprehended A.R., who was identified at the scene
by Kalisetty and Trevino as the person who robbed the store.

 

Finally, the State called CCPD officer
Jamie Lee Pelfrey, who testified that he participated in the apprehension of
A.R.  Officer Pelfrey testified that he found a white muscle shirt and a blue
bandana at the scene of A.R.'s apprehension, clothes that matched the
description of what the robber was wearing.

C. 
Cardenas's Evidence

            The defense re-called Trevino, who testified
that he had overheard Martinez, the cab driver, telling the police officers
that Cardenas's face was covered.

            Cardenas then testified on his own behalf. 
Cardenas testified that he does not remember the robbery because he had taken
four to five Xanax earlier in the evening.  Cardenas could not remember A.R.
running out of John's Market or being arrested; Cardenas had no idea how he
ended up in jail.  Cardenas denied going into the store with A.R. earlier on
the day of the robbery. 

D. 
Discussion

Cardenas argues that the "facts
available to infer that there was an agreement between [A.R. and himself] are
few."  Cardenas argues, in particular, that there was no evidence to prove
that he participated in the aggravating element—here, the use of a firearm.  See
Wooden v. State, 101 S.W.3d 542, 547-48 (Tex. App.–Fort Worth 2003, pet.
ref'd) ("In order to convict a defendant as a party to an aggravated
offense, the State must prove that the defendant was criminally responsible for
the aggravating element.") (citing Stephens v. State, 717 S.W.2d
338, 340 (Tex. Crim. App. 1986)).  Even if few, however, the facts are
nonetheless sufficient.  

Viewing
the evidence in the light most favorable to the verdict, the jury could
rationally infer the following from the evidence presented at trial:  A.R. and
Cardenas had been to John's Market together earlier on the day of the robbery
to survey the situation in the store; A.R. committed the aggravated robbery by
using a sawed-off shotgun to threaten Kalisetty and take the cash register;
Cardenas attempted to conceal his identity by pulling his white t-shirt over
his face while he waited outside the store for A.R.; Cardenas assisted A.R. by
holding his bicycle outside the store while A.R. was robbing it; and Cardenas
fled the scene with A.R.'s bicycle when the robbery went awry.  

In determining whether the evidence was
sufficient to prove that a defendant participated as a party in committing an
offense, we look to "events before, during, and after the commission of
the offense."  Powell, 194 S.W.3d at 507.  If the evidence shows
that the defendant was present at the scene and encouraged the commission of the
offense by acts, words, or other agreement, the evidence is legally sufficient
to convict under the law of the parties.  Wooden, 101 S.W.3d at 546.  In
particular, evidence of flight from the scene and furtive behavior is
indicative of guilt.  Clayton v. State, 235 S.W.3d 772, 780 (Tex. Crim.
App. 2007); Guevara, 152 S.W.3d at 50; see also Pereida v. State,
No. 13-09-00416-CR, 2010 WL 2967157, at *3 (Tex. App.–Corpus Christi July 29,
2010, pet. ref'd) (mem. op., not designated for publication).

Based on the evidence that A.R. and
Cardenas had been in the store together earlier in the day and were riding
their bicycles together the evening of the robbery, the jury could have
rationally concluded that Cardenas was aware of the details of the robbery,
including that A.R. was in possession of a shotgun, a weapon not easily
concealable while riding a bicycle.  See Escobar, 28 S.W.3d at 774-75
(concluding that where appellant entered the car at the same time the primary
actor was pointing the gun at the victim the evidence was sufficient to show
appellant knew of the gun used in commission of the offense, and was thus
guilty as a party to aggravated robbery); see also Powell, 194 S.W.3d at
506 (holding that circumstantial evidence of party participation alone is sufficient).
 And Cardenas's attempts to conceal his face, flee from the scene, and remove
A.R.'s bicycle from the scene are all circumstances indicative of guilt.  See
Clayton, 235 S.W.3d at 780; Guevara, 152 S.W.3d at 50.  Looking
as we must to the events before, during, and after the robbery and mindful that
circumstantial evidence is sufficient even to prove participation as a party,
we conclude that the evidence was such that the jury could have rationally
determined that Cardenas intended to assist A.R. in the commission of the
aggravated robbery of John's Market.  See Tex. Penal Code Ann. §§ 7.02(a)(2), 29.03(a)(2); Laster,
275 S.W.3d at 517; Powell, 194 S.W.3d at 507.  A conflicting inference
arising from the evidence produced at trial was that Cardenas, in a
drug-induced haze, just happened to be outside John's Market at the time of the
robbery, holding A.R.'s bicycle and without any knowledge of what was happening
inside the store.  It was within the province of the jury to resolve this
apparent inconsistency in the evidence.  See Curry, 30 S.W.3d at 406; see
also Padilla v. State, No. PD-1283-09, 2010 WL 3894787, at *3 (Tex. Crim.
App. Oct. 6, 2010) ("Faced with a record of historical facts that support
conflicting inferences, the reviewing court must presume . . . that the trier
of fact resolved any such conflicts in favor of the prosecution, and must defer
to that resolution." (internal quotations omitted)).  We conclude the
evidence was therefore legally sufficient to convict Cardenas under the law of
the parties.  Cardenas's first issue is overruled.

III. 
Ineffective Assistance of Counsel

 

            By his second and third issues, Cardenas
complains that his trial counsel provided ineffective assistance.

A. 
Standard of Review and Applicable Law

We apply the two-pronged Strickland
analysis to determine whether counsel's representation was so deficient that it
violated a defendant's constitutional right to effective assistance of
counsel.  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App.
2005); Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi
2006, no pet.); see Strickland v. Washington, 466 U.S. 668, 684 (1984). 
An appellant claiming a Strickland violation must establish that (1)
"his attorney's representation fell below an objective standard of
reasonableness [deficiency prong], and (2) there is a reasonable probability
that, but for his attorney's errors, the result of the proceeding would have
been different [prejudice prong]."  Jaynes, 216 S.W.3d at 851; see
Strickland, 466 U.S. at 687.  

As
to the deficiency prong, we afford great deference to trial counsel's
ability—"an appellant must overcome the strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance"
and that counsel's actions were the result of sound and reasonable trial
strategy.  Jaynes, 216 S.W.3d at 851.  A reasonable probability of
prejudice is one that is "sufficient to undermine confidence in the
outcome," and a lawyer's deficient performance must undercut the
"proper functioning of the adversarial process" such that the result
of the trial cannot be reliable.  Mallett v. State, 65 S.W.3d 59, 62
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812-813 (Tex.
Crim. App. 1999).  The appellant must prove both elements of the Strickland
test by a preponderance of the evidence.  Munoz v. State, 24 S.W.3d 427,
434 (Tex. App.–Corpus Christi 2000, no pet.).  

Typically, a silent record that provides
no explanation for counsel's actions will not overcome the strong presumption
of effective assistance.  Rylander v. State, 101 S.W.3d 107, 110-11
(Tex. Crim. App. 2003).  In this case, however, Cardenas filed a motion for new
trial arguing his ineffective assistance of counsel claims, and after a
hearing, the trial court denied Cardenas's motion for new trial.  Because a
hearing was held at which Cardenas presented evidence supporting his claims for
ineffective assistance of counsel, Cardenas's issue is really a challenge to
the trial court's ruling on the motion for new trial.  See Charles v.
State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), superseded by rule on
other grounds, State v. Herndon by 215 S.W.3d 901 (Tex. Crim. App.
2007); Shanklin v. State, 190 S.W.3d 154, 158 (Tex. App.–Houston [1st
Dist.] 2005), pet. dism'd, 211 S.W.3d 315 (Tex. Crim. App. 2007).  Under
these circumstances, we review the Strickland analysis through an abuse
of discretion standard of review, and viewing the evidence in the light most
favorable to the ruling, we will reverse only if the trial court's decision is
arbitrary or unreasonable. My Thi Tieu v. State, 299 S.W.3d 216, 223
(Tex. App.–Houston [14th Dist.] 2009, pet. ref'd); Shanklin, 190 S.W.3d
at 158-59.

A trial court abuses its discretion by
denying a motion for new trial only when no reasonable view of the record could
support the trial court's ruling.  Charles, 146 S.W.3d at 208; see
Webb v. State, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).  We afford
almost total deference to a trial court's determination of the historical facts
and of mixed questions of law and fact that turn on an evaluation of the
credibility and demeanor of the witnesses.  Kober v. State, 988 S.W.2d
230, 233 (Tex. Crim. App. 1999).  Because the trial judge is the sole judge of
the credibility of the witnesses, a trial court does not abuse its discretion
by denying a motion for new trial based on conflicting evidence.  See Lewis
v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).  Where the trial court
has not made explicit findings of fact, we will imply all findings necessary to
support the ruling “when such implicit factual findings are both reasonable and
supported in the record.”  Johnson v. State, 169 S.W.3d 223, 239 (Tex.
Crim. App. 2005).

B. 
Motion for New Trial Hearing

            At the hearing on Cardenas's motion for new
trial, Doug Mann, the initial prosecutor on Cardenas's case, testified that he
communicated a plea bargain offer to Rene Flores, Cardenas's trial counsel.  In
exchange for a plea of guilty to the lesser-included offense of robbery,
Cardenas would receive four years' incarceration.  Mann testified that because
of an unrelated burglary charge pending against Cardenas, he did not believe
that Cardenas was a candidate for probation.  Mann gave Flores discovery on the
burglary charge and informed Flores that the burglary would come in at the
punishment phase of the trial.  Mann told Flores that his four-year offer was a
formal offer, but testified that the offer was never put in writing.  Mann also
reminded Flores of his duty to convey the offer to Cardenas.  According to
Mann, Flores was hesitant to accept any offer that involved incarceration. 
Mann informed Flores that Cardenas should accept the offer before the next
prosecutor took over the case because he was unsure whether the next prosecutor
would leave the four-year deal on the table.  Flores told Mann that he felt
like he could obtain an acquittal on the robbery case but not on the burglary
case.

James
Sales, the prosecutor who took over the case from Mann, testified next.  Sales
testified that he revoked Mann's four-year offer when he took over the case. 
Before trial, he communicated a new offer to Flores:  in exchange for a plea of
guilty to aggravated robbery, Cardenas would receive five years'
incarceration.  Sales told Flores that the offer would expire at the beginning
of trial.  

Next, Yvonne Moya, Cardenas's mother,
testified that Flores never communicated any plea bargain offers to her or
Cardenas.  Moya admitted that she may not have been there for all the meetings
between Flores and Cardenas.  She testified that Cardenas did not want to go to
prison and was aiming for dismissal or a sentence of probation.  Flores made
Moya believe he could obtain a dismissal of Cardenas's case.

Cardenas testified next.  He stated that
Flores never communicated with him about the strength or weakness of the
State's case.  Flores did tell Cardenas that the case should be dismissed.  Flores
did not tell Cardenas that the State was only interested in prison time. 
Cardenas testified that Flores never conveyed any plea bargain offers to him
and that he would have accepted either the four-year or five-year offer. 
Cardenas testified that he asked Flores to seek a plea bargain; at one jail
visit in particular, Cardenas told Flores that if he could get a five or
seven-year offer, he would consider it, but that Flores told Cardenas not to
worry because he believed he could obtain a dismissal.

Finally, Flores testified.  He stated
that he did not believe Mann's four-year offer was a firm offer because Mann
was not the prosecutor who would be trying the case.  Flores believed the
State's case on the robbery charge was weak and wished only to deal on the
burglary charge.  Flores informed Cardenas that the range of punishment for
aggravated robbery was five to ninety-nine years' incarceration.  Flores
communicated the five-year offer to Cardenas, but Cardenas turned it down. 
Flores agreed that he never conveyed the four-year offer to Cardenas.  Flores
believed that Cardenas's "bottom line" was dismissal or probation;
Cardenas did not want prison time.  

With regard to the discovery given to
him by the State, Flores testified that he was given a DVD that contained the
videotaped police statement of the store clerk, in which the clerk states that
he saw Cardenas standing by the dumpster outside the store.[2] 
Flores testified that neither he nor the State could open the video file on the
DVD.  Flores agreed that the testimony of the store clerk was damaging because
the State's only other eye-witness, the cab driver, was a bad witness.  Flores
testified that, because he did not view the statement, he was unable to discuss
the potential impact of that testimony with Cardenas before trial.  Flores
testified that if he had seen the clerk's statement before trial, he might have
pushed harder for Cardenas to accept the five-year plea offer.  The videotaped
statement was not entered into evidence at the hearing.

C. 
Failure to Communicate Plea Bargain Offer

By his second issue, Cardenas argues
that Flores was ineffective by failing to communicate Mann's four-year plea
bargain offer to him.[3] 
Cardenas claims that he would have accepted the plea bargain if the offer had
been communicated to him and was therefore prejudiced because he received a
sentence far in excess of the sentence offered by the State in its offer.

            "Failure of defense counsel to inform a
criminal defendant of plea offers made by the State is an omission that falls
below an objective standard of professional reasonableness."  Ex parte
Lemke, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000).  However, when conversations
between defense counsel and the State do not rise to the level of a "firm
plea bargain offer," defense counsel's failure to convey that conversation
may be reasonable.  Hernandez v. State, 28 S.W.3d 660, 666 (Tex.
App.–Corpus Christi 2000, pet. ref'd); see Harvey v. State, 97 S.W.3d
162, 167 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd).  Whether these
conversations constituted offer and acceptance of plea, and thus created a duty
in defense counsel to inform the defendant of the State's offer, are questions
of fact for the trial court.  Harvey, 97 S.W.3d at 167 (citing Rodriquez
v. State, 509 S.W.2d 319, 321 (Tex. Crim. App. 1974)).

            At the hearing,
there was conflicting testimony about whether Mann's four-year plea bargain
offer was a formal, or firm, offer.  Mann testified that it was; Flores
testified that he never considered the offer to be firm because Mann was soon
going to be handing the case over to another prosecutor.  Regardless, the
record does not demonstrate that the four-year offer was reduced to writing.  Because
the trial court did not make findings of fact, we imply all findings necessary
to support the verdict so long as those implied findings are reasonable and
supported by the record.  See Johnson, 169 S.W.3d at 239.  Faced
with the conflicting testimony, it would have been reasonable for the trial
court to find that no firm plea bargain offer was made, and we therefore imply
this finding.  See Lewis, 911 S.W.2d at 7 (holding that a trial court
cannot abuse its discretion when it makes determinations based on conflicting
evidence).  And because we must defer to the trial court on historical fact
determinations such as these, see Kober, 988 S.W.2d at 233, we cannot
conclude that Flores's failure to communicate the conversation between him and
Mann was objectively unreasonable and thus deficient.  See Hernandez, 28
S.W.3d at 666; see also Jaynes, 216 S.W.3d at 851 (holding that there is
a strong presumption that counsel's actions fell within a wide range of
reasonable professional assistance).  The trial court did not abuse its
discretion in denying Cardenas's motion for new trial in so far as it was based
on Flores's alleged failure to communicate the four-year offer.  See Charles,
146 S.W.3d at 208 (holding that a trial court does not abuse its discretion
denying a motion for new trial so long as its decision is supported by a
reasonable view of the record).  Cardenas's second issue is overruled.

D. 
Failure to Review Discovery

            By his third issue, Cardenas argues that Flores
was ineffective for failing to view the DVD containing the store clerk's
videotaped police statement, which he argues would have affected counsel's
evaluation of the strength of the State's case and, as a result, Cardenas's
decision to plea bargain.  As in his second issue, Cardenas asks for
reinstatement of the four-year plea bargain offer.

            In Ex parte Briggs, the court of
criminal appeals explained that:

"Strategic choices made after thorough investigation
of law and facts relevant to plausible options are virtually unchallengeable;
and strategic choices made after less than complete investigation are
reasonable precisely to the extent that reasonable professional judgments
support the limitations on investigation.  In other words, counsel has a duty to
make reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary.  In any ineffectiveness case, a
particular decision not to investigate must be directly assessed for
reasonableness in all the circumstances, applying a heavy measure of deference
to counsel's judgments."

 

187 S.W.3d 458, 466-67 (Tex.
Crim. App. 2005) (quoting Wiggins v. Smith, 539 U.S. 510, 521-22 (2003))
(other citations omitted); see Ex parte Martinez, 195 S.W.3d 713, 721
(Tex. Crim. App. 2006).

            The testimony at the new trial hearing
established that neither the State nor Flores could access the file on the DVD
containing the video recording of the clerk's police statement.  Cardenas
presented no other evidence at the hearing regarding efforts by Flores to open
the file, such as the technology required to access the file, and did not
question Flores about his reasons for failing to further pursue the issue with
the DVD.  Without more evidence about Flores's decisions and strategies regarding
the DVD, we cannot say that Cardenas proved that Flores failed to make a
reasonable decision that further investigation of the matter was unnecessary.  See
Ex parte Briggs, 187 S.W.3d at 466-67; see also Jaynes,
216 S.W.3d at 851; Munoz, 24 S.W.3d at 434 (holding that a defendant
must prove deficiency by a preponderance of the evidence).

            Even if Flores's performance was deficient in
failing to more adamantly pursue the evidence on the DVD, however, we still
conclude that Cardenas failed to show how that deficiency caused the harm
claimed on appeal—i.e., that Cardenas did not take a plea bargain and received
a harsher sentence as a result.  Cardenas's prejudice argument can be
summarized as follows:  if Flores had been aware of the incriminating
eye-witness testimony of the store clerk, Flores's assessment of the strength
of the State's case would have been different; Flores would have therefore been
less confident that he could obtain a dismissal or a sentence of probation;
Cardenas would have had the benefit of this less optimistic view of the State's
case to consider in making his plea decision; and Cardenas would have taken a
plea offer and received less prison time than he ultimately was sentenced to by
the jury.[4] 


Flores did testify at the new trial hearing
that if he had seen the clerk's videotaped statement before trial, he might
have pushed harder for Cardenas to accept the five-year plea offer.  This
speculative, hindsight statement—the only evidence that arguably directly
support Cardenas's argument on appeal—does not prove that Flores would have
altered his approach to Cardenas's case at trial.  See Kober, 988 S.W.2d
at 232-33 ("Some possibility that an error might affect the proceedings is
insufficient to show prejudice under Strickland . . . .  It is not
enough for the defendant to show that the errors had some conceivable effect on
the outcome of the proceeding." (internal quotations omitted)).  Moreover,
the testimony at the hearing on Cardenas's motion for new trial cast doubt on
whether Cardenas would have accepted any plea bargain offer.  Mann testified
that Flores seemed reluctant to accept any offer that involved prison time,
which was corroborated by testimony from Flores and Moya that Cardenas sought
to avoid prison time.  Moya testified that her son did not want to go to prison
and was aiming for dismissal or probation, and Cardenas testified similarly. 
Flores testified that Cardenas's "bottom line" was dismissal or
probation.  Even though Cardenas testified that he asked Flores to pursue a
plea bargain and would be amenable to prison time, it was within the province
of the trial court to resolve this conflicting testimony, and we must defer to
this determination because it was based on the credibility and demeanor of the
witnesses at the hearing.  See id. at 233; Lewis, 911 S.W.2d at
7.

In sum, based on the evidence presented
at the hearing, we cannot conclude that the trial court abused its discretion
in denying Cardenas's motion for new trial in so far as it was based on
Flores's alleged failure to adequately investigate.  See Charles,
146 S.W.3d at 208.  Cardenas's third issue is overruled.

IV. 
Conclusion

 

            The judgment of the trial court is affirmed.

 

                                                                                         NELDA
V. RODRIGUEZ

                                                                                         Justice

 

Do not publish.

Tex.
R. App. P.
47.2(b).

 

Delivered and filed
the 10th 

day of February, 2011.

                                                                                                                                                            









[1]
A.R. was fifteen years old at
the time of the robbery, and the record does not indicate whether he was tried
as an adult or a juvenile.  Out of an abundance of caution, we will refer to
him by his initials.  See Tex. R.
App. P. 9.8.





[2]
At the hearing, the witnesses
did not specify whether the "store clerk" in the video was Kalisetty
or Trevino.

 





[3]
Although the evidence at the
hearing revealed both a four-year and five-year offer by the State, Cardenas
argues only that he was prejudiced by his trial counsel's failure to
communicate the four-year offer and asks only for reinstatement of the
four-year offer.  We therefore will not address the five-year offer made by the
State.





[4]
We note that this argument by
Cardenas necessitates, to a certain degree, that he had knowledge of the plea
bargain offers—knowledge he adamantly denies in his second issue.