

# NUMBER 13-09-00369-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE CARDENAS,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                 Appellee.

## On appeal from the 117th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellant Jose Cardenas challenges his conviction by a jury for aggravated robbery, a first degree felony, for which he was sentenced to thirty years' incarceration. *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2003). By three issues, Cardenas argues that: (1) the evidence was legally and factually insufficient to prove he was guilty as a party in the aggravated robbery; (2) his trial counsel was ineffective for failing to

communicate certain plea offers to him; and (3) his trial counsel was ineffective for failing to review certain discovery that would have revealed the weakness of the State's case against Cardenas. We affirm.

## I. BACKGROUND

In August 2008, A.R.,[1] Cardenas's friend, robbed John's Market, a convenience store in Corpus Christi, Texas. Because of his alleged connection to that offense, Cardenas was indicted for aggravated robbery as follows:

> [O]n or about August 24, 2008, in Nueces County, Texas, [Cardenas] did then and there while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place Manoj Kalisetty in fear of imminent bodily injury or death, and [Cardenas] did then and there use or exhibit a deadly weapon, to wit: a firearm . . . .

*See id.* § 29.03(a)(2). Cardenas pleaded not guilty to the offense, and his case was tried to a jury. At trial, Cardenas did not dispute that A.R. had committed the aggravated robbery. After the close of evidence, the jury was charged on aggravated robbery and the law of the parties and returned a guilty verdict, convicting Cardenas of aggravated robbery. After a hearing on punishment, the jury sentenced Cardenas to thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Cardenas argues that the evidence was legally and factually insufficient to prove he was guilty as a party in the aggravated robbery. Specifically, Cardenas argues that the evidence that he "was outside the back of John's Market when

---

[1] A.R. was fifteen years old at the time of the robbery, and the record does not indicate whether he was tried as an adult or a juvenile. Out of an abundance of caution, we will refer to him by his initials. *See* TEX. R. APP. P. 9.8.

2

it was robbed, straddling one bicycle, holding another, and left the back of the store after the robbery with both bicycles, one of which belonged to the robber is . . . insufficient to prove he was guilty as a party."

## A.   Standard of Review and Applicable Law

Although Cardenas challenges both the legal and factual sufficiency of the evidence, in light of the Texas Court of Criminal Appeal's recent *Brooks v. State* opinion, we will conduct only a legal sufficiency review.   *See* 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).   *Brooks* held that there is "no meaningful distinction between the . . . legal-sufficiency standard and the . . . factual-sufficiency standard, and these two standards have become indistinguishable."   *Id.* at 902.   A legal sufficiency standard is "the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element in a criminal offense that the State is required to prove beyond a reasonable doubt.   All other cases to the contrary . . . are overruled."   *Id.* at 912.

When conducting a legal sufficiency review, a court must ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"—not whether "*it* believes that the evidence at the trial established guilt beyond a reasonable doubt."   *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).   A legal sufficiency analysis requires the court to view all of the evidence in "a light most favorable to the verdict and to determine whether a rational trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt."   *Id.*; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).   The trier of fact is the sole judge of the facts, the credibility of the witnesses, and the weight given to testimony.   TEX. CODE

CRIM. PROC. ANN. art. 38.04 (Vernon 1979); *Beckham v. State*, 29 S.W.3d 148, 151 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). We do not reevaluate the weight or credibility of the evidence, nor do we substitute our own conclusions for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

Legal sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

As indicted in this case, a person is guilty of aggravated robbery if he "commits robbery" and "uses or exhibits a deadly weapon." TEX. PENAL CODE ANN. § 29.03(a)(2). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a)(2) (Vernon 2003). A person commits the offense as a party if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (Vernon 2003).

4

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). "Circumstantial evidence alone may be used to prove that a person is a party to an offense." *Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006) (citations omitted); *Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App.–Corpus Christi 2000, pet. ref'd). "'[T]he standard of review on appeal is the same for both direct and circumstantial evidence cases.'" *Kuciemba*, 310 S.W.3d at 462 (quoting *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)). Further, the law does not require that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative effect of all the incriminating facts is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13. So long as "the verdict is supported by a reasonable inference, it is within the province of the fact[]finder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 323.

## B. The State's Evidence

The State first called Manoj Kalisetty, the clerk at John's Market at the time of the robbery. Kalisetty testified that a man with a bandana over his face came into the store and demanded money. Kalisetty recognized the man as one who came to John's Market regularly and, at first, believed that the man was joking. When Kalisetty did not hand over the money, the man attempted to pick up the cash register. When Kalisetty and the store's stocker tried to stop the man from taking the cash register, he pulled a gun out, pointed it at Kalisetty, and Kalisetty ran to the store's office because he feared for his life.

5

The man then ran out of the store with the cash register and gun. Kalisetty testified that the man had come into the store two or three times earlier that day.

Jesse Trevino, the stocker at John's Market, testified next. Trevino testified that he recognized the man who pulled the gun and took the cash register as a store regular. The man was wearing a bandana over his face. Trevino followed the man as he ran out of the store and testified that the man dropped the gun and cash register outside the store. Trevino found another person outside the store, whom he identified as Cardenas. He testified that Cardenas had been in the store with the robber several times earlier that day. Trevino testified that Cardenas was sitting on a bicycle by the dumpster outside the store; Cardenas was holding another bicycle and had a white shirt over his face. Trevino testified that Cardenas did not do anything to assist the robber as he ran past and that Cardenas just stood by the dumpster and watched him run by. Trevino testified that the robber, whom he finally identified as A.R., always rode his bicycle to the store.

Next, Raul Martinez, a cab driver who came to John's Market to pick up a customer at the time of the robbery, testified that when he drove up to the store, he saw the clerk inside with his hands up. Martinez testified that he saw another person by the dumpster with a white t-shirt pulled up over his face straddling a bike and holding another bike; he identified that person as Cardenas. Martinez believed, and told police, that Cardenas was the look-out. Martinez testified that Cardenas did not help A.R. and looked "out of it." He testified that Cardenas did not move when the police arrived.

Officer Joseph Garza of the Corpus Christi Police Department (CCPD) then testified that when he arrived at the scene, he found Cardenas, with his shirt over his face, riding away from John's Market dragging another bicycle. Officer Garza believed that if

6

the extra bicycle had been left at the scene, it could have been used to identify the other person involved in the robbery; by taking the bicycle with him, Officer Garza testified, Cardenas was assisting the robber in hiding his identity. Officer Garza described Cardenas's riding as "hurr[ied]" and it appeared "obvious" to Officer Garza that Cardenas was fleeing the scene and trying to take evidence with him. Officer Garza testified that when he was transporting A.R. to jail, A.R. stated that the other bicycle was his.

CCPD Officer Jaime Silvas arrived at the scene with Officer Garza. Officer Silvas testified that he witnessed Cardenas, with a white t-shirt on top of his head, riding away from John's Market on a bicycle and that he was dragging another bicycle with him. Officer Silvas further testified that, when they apprehended Cardenas, he was travelling toward the location where A.R. had dropped the cash register.

CCPD Officer Andrew Ybanez identified Cardenas at the scene. Cardenas told Officer Ybanez that he and A.R. had been riding their bicycles together that evening. Officer Ybanez testified that it is difficult to determine whether a person has been taking Xanax and that he was unsure if Cardenas had taken any pills. He testified that Cardenas was able to give him his date of birth and address and that he did not appear intoxicated. Officer Ybanez also testified that Cardenas gave the wrong name when he checked into the jail, but that it is not unusual for a person to lie about their name when checking into jail.

CCPD Officer Isaac Rodriguez testified about the gun used in the robbery. He identified it as a sawed-off shotgun and stated it was capable of inflicting serious bodily injury or death. Officer Rodriguez testified that he apprehended A.R., who was identified at the scene by Kalisetty and Trevino as the person who robbed the store.

7

Finally, the State called CCPD officer Jamie Lee Pelfrey, who testified that he participated in the apprehension of A.R. Officer Pelfrey testified that he found a white muscle shirt and a blue bandana at the scene of A.R.'s apprehension, clothes that matched the description of what the robber was wearing.

## C. Cardenas's Evidence

The defense re-called Trevino, who testified that he had overheard Martinez, the cab driver, telling the police officers that Cardenas's face was covered.

Cardenas then testified on his own behalf. Cardenas testified that he does not remember the robbery because he had taken four to five Xanax earlier in the evening. Cardenas could not remember A.R. running out of John's Market or being arrested; Cardenas had no idea how he ended up in jail. Cardenas denied going into the store with A.R. earlier on the day of the robbery.

## D. Discussion

Cardenas argues that the "facts available to infer that there was an agreement between [A.R. and himself] are few." Cardenas argues, in particular, that there was no evidence to prove that he participated in the aggravating element—here, the use of a firearm. *See Wooden v. State*, 101 S.W.3d 542, 547-48 (Tex. App.–Fort Worth 2003, pet. ref'd) ("In order to convict a defendant as a party to an aggravated offense, the State must prove that the defendant was criminally responsible for the aggravating element.") (citing *Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986)). Even if few, however, the facts are nonetheless sufficient.

8

Viewing the evidence in the light most favorable to the verdict, the jury could rationally infer the following from the evidence presented at trial: A.R. and Cardenas had been to John's Market together earlier on the day of the robbery to survey the situation in the store; A.R. committed the aggravated robbery by using a sawed-off shotgun to threaten Kalisetty and take the cash register; Cardenas attempted to conceal his identity by pulling his white t-shirt over his face while he waited outside the store for A.R.; Cardenas assisted A.R. by holding his bicycle outside the store while A.R. was robbing it; and Cardenas fled the scene with A.R.'s bicycle when the robbery went awry.

In determining whether the evidence was sufficient to prove that a defendant participated as a party in committing an offense, we look to "events before, during, and after the commission of the offense." *Powell*, 194 S.W.3d at 507. If the evidence shows that the defendant was present at the scene and encouraged the commission of the offense by acts, words, or other agreement, the evidence is legally sufficient to convict under the law of the parties. *Wooden*, 101 S.W.3d at 546. In particular, evidence of flight from the scene and furtive behavior is indicative of guilt. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007); *Guevara*, 152 S.W.3d at 50; *see also Pereida v. State*, No. 13-09-00416-CR, 2010 WL 2967157, at *3 (Tex. App.–Corpus Christi July 29, 2010, pet. ref'd) (mem. op., not designated for publication).

Based on the evidence that A.R. and Cardenas had been in the store together earlier in the day and were riding their bicycles together the evening of the robbery, the jury could have rationally concluded that Cardenas was aware of the details of the robbery, including that A.R. was in possession of a shotgun, a weapon not easily concealable while riding a bicycle. *See Escobar*, 28 S.W.3d at 774-75 (concluding that

9

where appellant entered the car at the same time the primary actor was pointing the gun at the victim the evidence was sufficient to show appellant knew of the gun used in commission of the offense, and was thus guilty as a party to aggravated robbery); *see also Powell*, 194 S.W.3d at 506 (holding that circumstantial evidence of party participation alone is sufficient). And Cardenas's attempts to conceal his face, flee from the scene, and remove A.R.'s bicycle from the scene are all circumstances indicative of guilt. *See Clayton*, 235 S.W.3d at 780; *Guevara*, 152 S.W.3d at 50. Looking as we must to the events before, during, and after the robbery and mindful that circumstantial evidence is sufficient even to prove participation as a party, we conclude that the evidence was such that the jury could have rationally determined that Cardenas intended to assist A.R. in the commission of the aggravated robbery of John's Market. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 29.03(a)(2); *Laster*, 275 S.W.3d at 517; *Powell*, 194 S.W.3d at 507. A conflicting inference arising from the evidence produced at trial was that Cardenas, in a drug-induced haze, just happened to be outside John's Market at the time of the robbery, holding A.R.'s bicycle and without any knowledge of what was happening inside the store. It was within the province of the jury to resolve this apparent inconsistency in the evidence. *See Curry*, 30 S.W.3d at 406; *see also Padilla v. State*, No. PD-1283-09, 2010 WL 3894787, at *3 (Tex. Crim. App. Oct. 6, 2010) ("Faced with a record of historical facts that support conflicting inferences, the reviewing court must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." (internal quotations omitted)). We conclude the evidence was therefore legally sufficient to convict Cardenas under the law of the parties. Cardenas's first issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second and third issues, Cardenas complains that his trial counsel provided ineffective assistance.

### A.    Standard of Review and Applicable Law

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel.    *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984).   An appellant claiming a *Strickland* violation must establish that (1) "his attorney's representation fell below an objective standard of reasonableness [deficiency prong], and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different [prejudice prong]."   *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

As to the deficiency prong, we afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance" and that counsel's actions were the result of sound and reasonable trial strategy.   *Jaynes*, 216 S.W.3d at 851.   A reasonable probability of prejudice is one that is "sufficient to undermine confidence in the outcome," and a lawyer's deficient performance must undercut the "proper functioning of the adversarial process" such that the result of the trial cannot be reliable.   *Mallett v. State*, 65 S.W.3d 59, 62 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812-813 (Tex. Crim. App. 1999).   The appellant must prove both elements of the

11

*Strickland* test by a preponderance of the evidence. *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.).

Typically, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of effective assistance. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003). In this case, however, Cardenas filed a motion for new trial arguing his ineffective assistance of counsel claims, and after a hearing, the trial court denied Cardenas's motion for new trial. Because a hearing was held at which Cardenas presented evidence supporting his claims for ineffective assistance of counsel, Cardenas's issue is really a challenge to the trial court's ruling on the motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by rule on other grounds*, *State v. Herndon by* 215 S.W.3d 901 (Tex. Crim. App. 2007); *Shanklin v. State*, 190 S.W.3d 154, 158 (Tex. App.–Houston [1st Dist.] 2005), *pet. dism'd*, 211 S.W.3d 315 (Tex. Crim. App. 2007). Under these circumstances, we review the *Strickland* analysis through an abuse of discretion standard of review, and viewing the evidence in the light most favorable to the ruling, we will reverse only if the trial court's decision is arbitrary or unreasonable. *My Thi Tieu v. State*, 299 S.W.3d 216, 223 (Tex. App.–Houston [14th Dist.] 2009, pet. ref'd); *Shanklin*, 190 S.W.3d at 158-59.

A trial court abuses its discretion by denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Charles*, 146 S.W.3d at 208; *see Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). We afford almost total deference to a trial court's determination of the historical facts and of mixed questions of law and fact that turn on an evaluation of the credibility and demeanor of the witnesses. *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). Because the

trial judge is the sole judge of the credibility of the witnesses, a trial court does not abuse its discretion by denying a motion for new trial based on conflicting evidence. *See Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Where the trial court has not made explicit findings of fact, we will imply all findings necessary to support the ruling "when such implicit factual findings are both reasonable and supported in the record." *Johnson v. State*, 169 S.W.3d 223, 239 (Tex. Crim. App. 2005).

## B. Motion for New Trial Hearing

At the hearing on Cardenas's motion for new trial, Doug Mann, the initial prosecutor on Cardenas's case, testified that he communicated a plea bargain offer to Rene Flores, Cardenas's trial counsel. In exchange for a plea of guilty to the lesser-included offense of robbery, Cardenas would receive four years' incarceration. Mann testified that because of an unrelated burglary charge pending against Cardenas, he did not believe that Cardenas was a candidate for probation. Mann gave Flores discovery on the burglary charge and informed Flores that the burglary would come in at the punishment phase of the trial. Mann told Flores that his four-year offer was a formal offer, but testified that the offer was never put in writing. Mann also reminded Flores of his duty to convey the offer to Cardenas. According to Mann, Flores was hesitant to accept any offer that involved incarceration. Mann informed Flores that Cardenas should accept the offer before the next prosecutor took over the case because he was unsure whether the next prosecutor would leave the four-year deal on the table. Flores told Mann that he felt like he could obtain an acquittal on the robbery case but not on the burglary case.

13

James Sales, the prosecutor who took over the case from Mann, testified next. Sales testified that he revoked Mann's four-year offer when he took over the case. Before trial, he communicated a new offer to Flores:   in exchange for a plea of guilty to aggravated robbery, Cardenas would receive five years' incarceration.   Sales told Flores that the offer would expire at the beginning of trial.

Next, Yvonne Moya, Cardenas's mother, testified that Flores never communicated any plea bargain offers to her or Cardenas.   Moya admitted that she may not have been there for all the meetings between Flores and Cardenas.   She testified that Cardenas did not want to go to prison and was aiming for dismissal or a sentence of probation.   Flores made Moya believe he could obtain a dismissal of Cardenas's case.

Cardenas testified next.   He stated that Flores never communicated with him about the strength or weakness of the State's case.   Flores did tell Cardenas that the case should be dismissed.   Flores did not tell Cardenas that the State was only interested in prison time.   Cardenas testified that Flores never conveyed any plea bargain offers to him and that he would have accepted either the four-year or five-year offer.   Cardenas testified that he asked Flores to seek a plea bargain; at one jail visit in particular, Cardenas told Flores that if he could get a five or seven-year offer, he would consider it, but that Flores told Cardenas not to worry because he believed he could obtain a dismissal.

Finally, Flores testified.   He stated that he did not believe Mann's four-year offer was a firm offer because Mann was not the prosecutor who would be trying the case. Flores believed the State's case on the robbery charge was weak and wished only to deal on the burglary charge.   Flores informed Cardenas that the range of punishment for

14

aggravated robbery was five to ninety-nine years' incarceration. Flores communicated the five-year offer to Cardenas, but Cardenas turned it down. Flores agreed that he never conveyed the four-year offer to Cardenas. Flores believed that Cardenas's "bottom line" was dismissal or probation; Cardenas did not want prison time.

With regard to the discovery given to him by the State, Flores testified that he was given a DVD that contained the videotaped police statement of the store clerk, in which the clerk states that he saw Cardenas standing by the dumpster outside the store.[2] Flores testified that neither he nor the State could open the video file on the DVD. Flores agreed that the testimony of the store clerk was damaging because the State's only other eye-witness, the cab driver, was a bad witness. Flores testified that, because he did not view the statement, he was unable to discuss the potential impact of that testimony with Cardenas before trial. Flores testified that if he had seen the clerk's statement before trial, he might have pushed harder for Cardenas to accept the five-year plea offer. The videotaped statement was not entered into evidence at the hearing.

### C. Failure to Communicate Plea Bargain Offer

By his second issue, Cardenas argues that Flores was ineffective by failing to communicate Mann's four-year plea bargain offer to him.[3] Cardenas claims that he would have accepted the plea bargain if the offer had been communicated to him and was therefore prejudiced because he received a sentence far in excess of the sentence offered by the State in its offer.

---

[2] At the hearing, the witnesses did not specify whether the "store clerk" in the video was Kalisetty or Trevino.

[3] Although the evidence at the hearing revealed both a four-year and five-year offer by the State, Cardenas argues only that he was prejudiced by his trial counsel's failure to communicate the four-year offer and asks only for reinstatement of the four-year offer. We therefore will not address the five-year offer made by the State.

15

"Failure of defense counsel to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness." *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000). However, when conversations between defense counsel and the State do not rise to the level of a "firm plea bargain offer," defense counsel's failure to convey that conversation may be reasonable. *Hernandez v. State*, 28 S.W.3d 660, 666 (Tex. App.–Corpus Christi 2000, pet. ref'd); *see Harvey v. State*, 97 S.W.3d 162, 167 (Tex. App.–Houston [14th Dist.] 2002, pet. ref'd). Whether these conversations constituted offer and acceptance of plea, and thus created a duty in defense counsel to inform the defendant of the State's offer, are questions of fact for the trial court. *Harvey*, 97 S.W.3d at 167 (citing *Rodriquez v. State*, 509 S.W.2d 319, 321 (Tex. Crim. App. 1974)).

At the hearing, there was conflicting testimony about whether Mann's four-year plea bargain offer was a formal, or firm, offer. Mann testified that it was; Flores testified that he never considered the offer to be firm because Mann was soon going to be handing the case over to another prosecutor. Regardless, the record does not demonstrate that the four-year offer was reduced to writing. Because the trial court did not make findings of fact, we imply all findings necessary to support the verdict so long as those implied findings are reasonable and supported by the record. *See Johnson*, 169 S.W.3d at 239. Faced with the conflicting testimony, it would have been reasonable for the trial court to find that no firm plea bargain offer was made, and we therefore imply this finding. *See Lewis*, 911 S.W.2d at 7 (holding that a trial court cannot abuse its discretion when it makes determinations based on conflicting evidence). And because we must defer to the trial court on historical fact determinations such as these, *see Kober*, 988 S.W.2d at

16

233, we cannot conclude that Flores's failure to communicate the conversation between him and Mann was objectively unreasonable and thus deficient. *See Hernandez*, 28 S.W.3d at 666; *see also Jaynes*, 216 S.W.3d at 851 (holding that there is a strong presumption that counsel's actions fell within a wide range of reasonable professional assistance). The trial court did not abuse its discretion in denying Cardenas's motion for new trial in so far as it was based on Flores's alleged failure to communicate the four-year offer. *See Charles*, 146 S.W.3d at 208 (holding that a trial court does not abuse its discretion denying a motion for new trial so long as its decision is supported by a reasonable view of the record). Cardenas's second issue is overruled.

### D. Failure to Review Discovery

By his third issue, Cardenas argues that Flores was ineffective for failing to view the DVD containing the store clerk's videotaped police statement, which he argues would have affected counsel's evaluation of the strength of the State's case and, as a result, Cardenas's decision to plea bargain. As in his second issue, Cardenas asks for reinstatement of the four-year plea bargain offer.

In *Ex parte Briggs*, the court of criminal appeals explained that:

"Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."

17

187 S.W.3d 458, 466-67 (Tex. Crim. App. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521-22 (2003)) (other citations omitted); *see Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006).

The testimony at the new trial hearing established that neither the State nor Flores could access the file on the DVD containing the video recording of the clerk's police statement.  Cardenas presented no other evidence at the hearing regarding efforts by Flores to open the file, such as the technology required to access the file, and did not question Flores about his reasons for failing to further pursue the issue with the DVD. Without more evidence about Flores's decisions and strategies regarding the DVD, we cannot say that Cardenas proved that Flores failed to make a reasonable decision that further investigation of the matter was unnecessary.  *See Ex parte Briggs*, 187 S.W.3d at 466-67; *see also Jaynes*, 216 S.W.3d at 851; *Munoz*, 24 S.W.3d at 434 (holding that a defendant must prove deficiency by a preponderance of the evidence).

Even if Flores's performance was deficient in failing to more adamantly pursue the evidence on the DVD, however, we still conclude that Cardenas failed to show how that deficiency caused the harm claimed on appeal—i.e., that Cardenas did not take a plea bargain and received a harsher sentence as a result.  Cardenas's prejudice argument can be summarized as follows:  if Flores had been aware of the incriminating eye-witness testimony of the store clerk, Flores's assessment of the strength of the State's case would have been different; Flores would have therefore been less confident that he could obtain a dismissal or a sentence of probation; Cardenas would have had the benefit of this less optimistic view of the State's case to consider in making his plea decision; and Cardenas would have taken a plea offer and received less prison time than

he ultimately was sentenced to by the jury.[4]

Flores did testify at the new trial hearing that if he had seen the clerk's videotaped statement before trial, he might have pushed harder for Cardenas to accept the five-year plea offer. This speculative, hindsight statement—the only evidence that arguably directly support Cardenas's argument on appeal—does not prove that Flores would have altered his approach to Cardenas's case at trial. *See Kober*, 988 S.W.2d at 232-33 ("Some possibility that an error might affect the proceedings is insufficient to show prejudice under *Strickland* . . . . It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (internal quotations omitted)). Moreover, the testimony at the hearing on Cardenas's motion for new trial cast doubt on whether Cardenas would have accepted any plea bargain offer. Mann testified that Flores seemed reluctant to accept any offer that involved prison time, which was corroborated by testimony from Flores and Moya that Cardenas sought to avoid prison time. Moya testified that her son did not want to go to prison and was aiming for dismissal or probation, and Cardenas testified similarly. Flores testified that Cardenas's "bottom line" was dismissal or probation. Even though Cardenas testified that he asked Flores to pursue a plea bargain and would be amenable to prison time, it was within the province of the trial court to resolve this conflicting testimony, and we must defer to this determination because it was based on the credibility and demeanor of the witnesses at the hearing. *See id.* at 233; *Lewis*, 911 S.W.2d at 7.

In sum, based on the evidence presented at the hearing, we cannot conclude that the trial court abused its discretion in denying Cardenas's motion for new trial in so far as

---

[4] We note that this argument by Cardenas necessitates, to a certain degree, that he had knowledge of the plea bargain offers—knowledge he adamantly denies in his second issue.

19

it was based on Flores's alleged failure to adequately investigate. *See Charles*, 146

S.W.3d at 208. Cardenas's third issue is overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 10th
day of February, 2011.